STATE of Texas, Appellant,

v.

James F. ALBRIGHT, Jr., et ux.,
Appellees.

No. 15662.

Court of Civil Appeals of Texas.

Dallas.

July 1, 1960.

Rehearing Denied July 22, 1960.

Will Wilson, Atty. Gen., H. Grady Chandler, John B. Webster, Robert G. Scofield and Ralph R. Rash, Asst. Attys. Gen., for appellant.

Locke, Purnell, Boren, Laney & Neely; Wayne O. Woodruff, Jess T. Hay and Charles G. Purnell, Dallas, for appellees.

YOUNG, Justice.

This is a condemnation suit wherein the State of Texas as plaintiff has taken 4.979 acres of land belonging to the Albrights as part of a right-of-way required for the National System of Interstate and Defense Highways. Award of the special commissioners was $67,500; judgment of trial court based on jury issues and answers was $166,811.60, less amount of commissioners' award, which had been withdrawn by defendants; plaintiff duly appealing.

The tract in question is situated at intersection of Samuell Boulevard and Ferguson Road in the eastern part of the City of Dallas; Samuell Boulevard being an east and west street and Ferguson Road, beginning at Samuell Boulevard, going to the northeast. Said land of defendants' contained approximately seven acres, out of which they had previously leased two service station sites under long-time leases; and by agreement, the case was tried on theory that the property embraced by these leases did not constitute a part of the remainder of the subject property. The area included in these leases occupied the corner of Samuell Boulevard and Ferguson Road, and along both streets from said corner,* leaving approximately six and one-fourth acres in the tract, which remainder also fronted on both Ferguson Road and Samuell Boulevard. The property was zoned for commercial uses, with no evidence offered relative to any probable change in zoning or like regulations; and insofar as

legal restrictions were concerned, the property could be devoted to any commercial use, subject apparently to issuance of city permit.

■ Along with legal definitions and instructions, the jury issues and answers were, in substance: (1) market value of the strip condemned for highway purposes on February 11, 1959, considered as severed land—$147,354; (2) market value of defendants' tract exclusive of strip condemned on February 11, 1959, immediately before the strip was taken for highway purposes— $48,607; (3) market value of defendants' tract immediately after the taking of the strip condemned for highway purposes— $29,149.40. In the court's charge, the term market value was defined as follows (plaintiff's objections relating to the italicized part thereof):

> "You are instructed that the term market value is the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, *taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.*"

With respect to "market value", the term was defined in language approved in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, which added to the definition approved in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, the above italicized wording; appellant arguing that such should have been deleted and the definition limited to that given in the Carpenter case; the stated objections being of no issue raised in the instant case "that there would be any probability of any future zoning change which might change the adaptability of the property" and "it would be prejudicial to put in here that there could be some reasonable probable use of this property sometime in the future." In City of

Austin v. Cannizzo, supra, it was held that in view of probable removal of zoning restrictions no error was involved in permitting a consideration by the jury of value of the subject land for commercial purposes, whereas appellant here points out that the property is already commercially zoned. However we conclude that the given definition was proper in view of the following facts in evidence.

All appraisal witnesses had agreed that the Albright tract was adaptable for uses higher than that to which it was being applied on date of taking (undeveloped); the dispute arising on the uses to which it could be put. Defense witnesses Shutt and Carmichael testified that the highest and best use for the property would be as a motel site; plaintiff's witnesses Rowan and Gallaway saying that it could not be used as a motel site because physically impractical and not economically feasible; Rowan further stating that the highest and best use was as a storage yard and that it would be difficult if not impossible for appellees to develop same or secure a building permit from the city, such tract being in pathway of a projected highway. Mr. Fondville, plaintiff's witness, on the other hand testified that the property having a frontage on Samuell Boulevard and Ferguson Road was a reasonably good motel site and had value as such. Another state witness was Hampton Couch, Civil Engineer and Director of Public Works, City of Dallas, who testified that a function of his department was to make recommendations to the City Council with reference to building permits; that if such a permit was requested on the subject property he would recommend its disapproval, but that his advice to the City Council for denial of a permit might be overruled. It would appear therefore that the court's definition of market value has general application to the instant case; the Cannizzo Supreme Court opinion not being limited to the precise fact there involved. "A charge directing the jury to take into account all the uses to which the property may be applied, and not merely the present

condition and the use to which it has been applied, is not objectionable where evidence of other possible uses of the property is produced." 16 Tex.Jur., Eminent Domain, Sec. 245, p. 569. And even in State v. Carpenter, supra [126 Tex. 604, 89 S.W.2d 198], the following language from Lewis on Eminent Domain is quoted with approval: that "the proper inquiry is, what is its (the land sought) market value, in view of any use to which it may be applied, and of all the uses to which it is adapted * * *".

■ Points two, three and four will next be considered. They complain of the trial court's error in admission over objection of defendant of Exhibit 40, which was an extract from the notes of Court Reporter Craig of testimony of plaintiff's witness Gromatzky elicited earlier on the trial; in restricting plaintiff's cross-examination of the court reporter; also in refusing to permit plaintiff to recall said witness Gromatzky for further development of the subject matter of Exhibit D–40 after the Court had stated in jury presence that he would be permitted to do so.

Defendants' Exhibit D–40 reflects testimony of plaintiff's witness Gromatzky (Senior Engineer in charge of construction, Interstate Highway 20) concerning elevations of the Albright tract above sea level and bears on amount of cubic yards of dirt necessary to make the entire property usable; testimony of other plaintiff witnesses estimating 40,000 cubic yards and defendant's engineering witness O. R. McElya, of only 1990 cubic yards as necessary for filling low areas to an elevation of 420 feet.[1] Sequence of testimony over the week's trial must first be stated.

On Friday Gromatzky was recalled by plaintiff, testifying from plaintiff's Exhibit 46, a contour map, among other things, to a lesser margin of variation in elevation on Ferguson Road and Samuell Boulevard; and after the testimony of two other witnesses, not relevant, the State had closed, subject "to right to present more evidence in response to rebuttal." Such rebuttal on part of defendants consisted in the described excerpt from Monday's testimony of Gromatzky in form of certificate indentified by the Court Reporter Craig, objected to as prejudicial, being matter that appellee should have touched upon when Gromatzky was last on the witness stand, which objection was overruled and Exhibit D–40 read to the jury. For cross-examination of the Reporter Craig, plaintiff's counsel then requested him to read questions and answers immediately before and after the transcription of Gromatzky's testimony, shown in Exhibit D–40. The request was refused, the court stating "now counsel you are familiar with the procedure well enough to know that the court can't have this whole case rehearsed without restraint as to former testimony presented." The jury was retired, the court then stating to the parties: "Now, then, let it show that out of the presence of the jury, the condemnee having rested and closed, the condemnor tendered an additional witness, Mr. Gromatzky, and

1. Exhibit D–40 (testimony of Gromatzky on Monday of trial) reads:
"Mr. Hay: Questions propounded to the witness Gromatzky by Mr. Shofield on direct examination, with reference to Plaintiff's Exhibit 1.
"Question: Does the map (Plaintiff's Exhibit 1) show the elevation as it progresses across the Albright property? Answer: No, are you talking about the freeway?
"Question: Yes, Does it reflect the present elevation? Answer: Yes, sir, this does, this line here. I don't know whether you can see it or not. It is a profile of the ground line, the present ground along the center line of this construction right here.
"Question: Can you go by figures there as it goes and tell the relation up and down? Answer: Well, the actual elevations, now, here they are, The elevation, the present ground where the highway comes in on the east side near Ferguson Road is approximately 429 feet, about 429 feet there and where it exits at Samuell's, it is about 420 so the present ground drops gradually about 9 feet from where it enters on Ferguson to where it exits on Samuells".

the Court refused to allow him any testimony at this stage other than an attack upon the evidence offered by condemnees through Mr. Roy Craig, the reporter, except a contest as to whether that testimony was correct, to which the condemnor excepted and tendered this as their bill of exception."

Appellant then perfected a bill of exceptions, developing from Gromatzky as a witness that a discrepancy existed between plaintiff's Exhibit 1 and plaintiff's Exhibit 46 plus working plans of the department, the latter of which was correct; resulting in differences in margin of elevations of some six and one-half feet. The effect of defendants' rebuttal (D-40) was simply to call attention of the jury to this conflict in testimony of Gromatzky. The jury did not read the Exhibit nor was it permitted to go to the jury room. Appellant cannot therefore invoke the provisions of Rule 287, Texas Rules of Civil Procedure (Jury's disagreement as to evidence) same dealing exclusively with procedure concerning the jury's review of testimony during their deliberations on which they disagree. Nor was excerpt D-40 excludable as hearsay, being testimony given by witness for one of the parties in the identical case on trial.

■ Further with reference to points three and four, appellant complains of the Court's refusal to permit (1) a reading by it from the Court Reporter's notes concerning testimony of Gromatzky immediately before and after the excerpt included in Exhibit D-40 and (2) or to recall said witness for closing rebuttal after stating before the jury that plaintiff would be permitted to do so; the net result being that it was precluded from cross-examination in either respect. We conclude that, under the circumstances, the trial court was unduly restrictive in the rulings made. We have read the excluded testimony which appellant had sought to introduce; and contrary to the assertion of appellee, the proffer did not amount to a motion by appellant to re-open his case and delve in

matters not touched by appellees' surrebuttal. (Exhibit D-40.) Even so, the result was no more than harmless error. Appellant could properly have made a transcription of the rejected reporter's notes (which do not appear of great significance) reading same to the jury in connection with closing argument; likewise demonstrating to the jury a correctness of the Friday's re-direct testimony of Gromatzky and in consequence that this earlier statement as reflected in Exhibit D-40 should be ignored. For after all, the entire controversy relates merely to conflicting testimony from the same witness, already before the jury.

■ Defendants' Exhibit 4 consists of a drawing in color superimposed on a plat of the Albright tract, prepared by O. R. McElya, a licensed professional engineer, purportedly to show adaptability of the subject property for motel purposes; this witness testifying to experience in land planning and use; the exhibit being drawn to show physical feasibility of placing such an improvement on the property, based on his analysis of the land's utility as a motor court site. The exhibit was rather an elaborate envisioning of the tract when occupied with motel units, cabanas, swimming pool, restaurant, office, etc. Appellant objected thereto (point five) "because it obviously is a dream or a plan which has been devised; it opens up too great a field of speculation and is remote and conjectural, * * *".

The objections were overruled by the court on assurance by defense counsel "that he will have a witness who will testify to its adaptability as a motel site and that this (exhibit D-4) is not a factual proposition but purely a projective of what would be, if his testimony is carried out * * *". Such evidence was supplied by McElya. Admission of the exhibit was a matter well within the court's discretion; American Guaranty Life, Health and Accident Ins. Co. v. State, Tex.Civ.App., 332 S.W.2d 135. The exhibit was properly admitted for purpose of showing a "use for which the property is adapted and might be

put;" just as in City of Austin v. Cannizzo, supra [153 Tex. 324, 267 S.W.2d 816], where plats were admitted in evidence for the limited purpose of showing adaptability of the subject lands for surburban uses. Appellees offered no evidence of value of the tract with such *motel in place;* thus observing the limitation of the Cannizzo case, the Supreme Court there holding that "A witness may give his opinion of the present market value of the land, taking into consideration its adaptability to subdivision for residential and commercial purposes and the cost of converting it to such uses, but inquiry into the details or mental processes by which the witness arrives at his conclusion is only proper on cross examination for the purpose of testing the credibility of the witness or for laying a predicate for impeachment." Incidentally appellant's witness Fondville, a motel owner and a builder, later testified the Albright tract to be a reasonable but not an exceptional site for a motel; also answering "yes, that is a very nice layout" to a question of whether Exhibit D–4 appeared to be a reasonable use of the Albright property for motel purposes as laid out "in that sketch". The point is overruled.

■ Defendants' Exhibit 8, also admitted over strong objection by plaintiff is presented in point six. The Exhibit is a picture or perspective of the property in suit, depicting the highway embankment across the part taken, prepared by Mr. McElya from plans and specifications furnished him by the Highway Department. It has bearing on issue three requiring the jury to determine market value of the remaining property after the condemnation, concerning use to be made of the property taken; that is, the type of structure which would be adjacent to appellees' remainder. Objections made to Exhibit D–8 in effect was that same was highly inaccurate and prejudicial. Some such inaccuracies were pointed out by appellant's engineer witness Gromatzky; for example, D–8 reflecting a vertical retaining wall at the bridge abutment and overpass (Ferguson Road and Samuell Boulevard) instead of a spill type retaining wall and underpass; Gromatzky admitting that the plans furnished McElya did not indicate what type of retaining wall would be used. According to McElya, the dark portions of the underpass at both Samuell Boulevard and Ferguson Road, as shown in the exhibit, were for purpose of denoting a traffic thoroughfare, and indicated location of the bridge overpasses; McElya stating in such connection to an inability to get more detailed information from the department. Judge Hyer properly ruled that the objections were addressed to the weight of the evidence rather than to its admissability, thus allowing the perspective to be introduced "for whatever it is worth." The fact that Exhibit D–8 included the two leaseholds (oil stations) did not infringe upon earlier stipulation of the parties because at no time was evidence introduced by anyone relating to value of oil station space, as part of the remainder property, either before or after the taking. Furthermore, numerous plats, photographs and maps had been introduced by both parties depicting the excluded leaseholds, Gromatsky testifying thereto without objection.

■ Appellant complains in point seven of excessiveness of jury verdict; placing a value of $147,354 on the land taken (Issue 1); and $48,607 on the remainder (Issue 2); making a total of $195,961 as valuation of the entire property. Its statement under this point details no testimony of any of the appraisers on land valuations, either of the part taken or damages to the remainder. It simply essays to demonstrate under the point, from testimony of appellees' appraisers and its own witness Fondville, that adaption of the property to motel use was "not economically feasible"; otherwise arguing that the claimed excessive jury findings were attributable to the trial court's errors and misconduct of opposing counsel as presented in other points of appeal. A review of the material facts underlying these jury answers is therefore deemed necessary.

A plat of the tract in question is here shown: The part taken marked A and the three separate pieces of land remaining, marked B, C and D.

Appellant's Interstate Highway 20 is being built as an eight lane expressway of concrete, four lanes on either side, divided by a twenty-foot raised median strip; overpassing Ferguson Road as it enters the Albright tract and traversing same to the southwest where it overpasses Samuell Boulevard and White Rock Creek. All appraisal testimony appears to be based on assumption that portions of the property would require dirt fills prior to development for commercial use. Appellant's witnesses Rowan and Gallaway asserted that 40,000 cubic yards of fill at a cost of some $20,000 would be required to bring 25,025 square feet of the tract to grade of Samuell Boulevard, it being wholly impractical to fill the remaining part of the property to a usable elevation, thus precluding its use as a motel site. Their conclusions were based on a rough and ready calculation, or "sight of eye," as Gallaway characterized it. On the other hand appellees' engineering witness testified that on basis of topographic survey, contour and relief maps prepared by him, only 1990 cubic yards of dirt at a cost of $796 would be required to fill the property in its entirety to an elevation of 420 feet; and from engineering and land use standpoint, when thus elevated to 420 feet, the land would be suitable for motel purposes as demonstrated by Exhibit D-4.

The following summary of evidence adduced on land valuations is taken from unchallenged statements under counter-point of appellees (see Saldana v. Garcia, 155 Tex. 242, 285 S.W.2d 197 (Syl. 3), that the jury verdict was not excessive, considering all testimony bearing thereon; being from Messrs. Rowan and Gallaway for condemnor and from Shutt and Carmichael on behalf of the landowners. And for purposes of valuations, all such appraisers agreed that the condemned property should be divided into three categories; Samuell frontage; Ferguson frontage; and backland.

Appellant's witness Gallaway placed a value on the land taken and damages to the part remaining of $46,558; having been a real estate broker for seven or eight years. His sole real estate or appraisal experience in vicinity of the subject land had consisted of appraisals for the highway project; work for the Highway Department consuming about 30% of his time. Appellant's witness Rowan placed a value on land taken and damages to the remainder of $47,300. He had been in the real estate business for six or seven years; not a real estate broker nor dealing in purchases and sales of real estate on the market. His appraisal work in the area had been for appellant, and between one-fifth and one-third of his time during past year had been consumed on highway appraisals. Mr. Gallaway admitted that traffic count on the two streets fronting the subject property was between 28,000 and 30,000 daily on Samuell Boulevard and 8200 cars daily on Ferguson Road and that traffic was a determining factor in valuing commercial property; that Samuell Boulevard was one of the best commercial arterial highways in East Dallas, Ferguson Road by reason of its traffic lending itself to commercial development; that he did not regard motel usage as the highest and best use of the property because "cost of getting the land ready to use as such, I think would be prohibitive."

On the other hand, appellees' witness Shutt testified that value of the land taken and the damage to the remainder was $227,132; his appraisal being based on ten years experience as a buyer, seller, broker and appraiser in the East Dallas area; having bought, sold or brokered approximately 300 parcels of land in the area over past five years; holding membership in various professional and appraisal organizations, and past president of White Rock Real Estate Board. Also his appraisal was based on familiarity with the Albright property and knowledge of recent comparable sales in that vicinity. Appellees' witness Carmichael placed a value on land taken and damages to part remaining of $191,000. With fifteen years of experience in real estate sales and appraisals, he had ap-

praised for condemning agents, Dallas Real Estate Board, banks, institutions and individuals. He was past president of Dallas Real Estate Board; basing the instant appraisal on knowledge of values in the area, of recent sales of comparable property as well as familiarity with the subject property.

In January 1957 a tract of land on Samuell Boulevard some 2700 feet west of the condemned tract sold for $2.26 per square foot. Although admitting comparability of the two tracts, appellant's appraisers valued the Samuell frontage at $1.15 per square foot; appellees' appraisers at $2 per square foot. In January 1956 a tract fronting on Ferguson Road approximately two blocks of the condemned land sold for $1.60 per square foot; and although admitting a 25% increase in land values since 1955, appellant's appraisers valued the Ferguson frontage at .08¢ per square foot; Messrs. Shutt and Carmichael valuing the same Ferguson frontage at $1.75 and $1.25 per square foot respectively. During the three years ending on December 31, 1958 back portions of several large tracts of land comparable to the property condemned, sold for .25¢ to .40¢ per square foot. Based partly on such sales, Shutt and Carmichael valued the back property at .50¢ and .40¢ per square foot; appellant's appraisers valuing the same at .02¢ per square foot.

■ Differences in valuation figures as between these two sets of witnesses border on the extreme, a matter we do not attempt to reconcile. Suffice it to say, under our duty to consider the evidence most favorable to the jury award (City of Houston v. Schorr, Tex.Civ.App., 279 S.W.2d 957) it is manifest that their findings on valuations of the property in question must be upheld. "Court of Civil Appeals was not authorized to set aside jury's verdict based on widely varying estimates of market value of realty condemned, since jury was the exclusive judge of the weight and credibility to be given the testimony." Reeves, et al. v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575 (Syl. 6).

■ In point eight, appellant complains of misconduct of counsel for appellees in testifying, and persisting, after adverse rulings of court, to ask questions concerning the "policy" of the City of Dallas and the State of Texas in "preventing the development of property that is on the route of a proposed highway." No error is seen; such testimony having been *excluded* by court ruling, the only evidence adduced as to the city's "policy" being contained in appellees' bill of exceptions, perfected outside the jury's presence. Moreover similar testimony had been elicited from appellant's appraiser Rowan without objection as detailed in forepart of this opinion. The alleged misconduct of counsel was no more than as is usually attendant upon a rather heated trial, cured by the court's instructions to the jury to disregard comments of opposing counsel. Likewise with reference to point nine of appellant charging appellees' counsel with being "impassioned and bitter"; remarks of such nature upon objection being promptly met by court instructions to the jury.

■ Points ten, eleven and twelve will be considered together. They predicate trial court errors (1) in overruling appellant's motion to suppress evidence that access to the new controlled access highway in question is to be denied; (2) likewise in admitting testimony over appellant's objection that access to the proposed facility will be denied; and (3) in refusing appellant's requested instruction to the jury that denial of access onto appellees' remaining tract of land should not be deemed as grounds for special exemplary damages and should not be considered by the jury in determining answers to Special Issue No. 3.

Invoked here is Art. 6674w-1, Vernon's Ann.Civ.St. (Acts 1957 Legislature), appellant arguing that denial of access to a new controlled access highway cannot be considered by appellees on the question of damages; same bearing upon the part marked "B" as in above plat of his land remaining, admittedly a land locked tri-

angle on the north, with no outlet to a public street without trespassing on lands of others; which was not so before the taking. Subdivision 1 of 6674w–1 does indeed grant to the highway department full authority to limit or control access; providing however that the power shall not be construed to alter the existing right of any person to compensation for damages suffered as a result of the exercise of such powers by the State Highway Commission under the State Constitution and Laws. The statute further provides that along new controlled state highways, abutting property owners shall not be entitled to access to such new highway location as a matter of right, and any denial of such access shall not be deemed as grounds for special or exemplary damages; but we have no such issues in this case. Section 3, Art. 6674w provides that in the exercise of the powers of Eminent Domain here conferred, the State Highway Department shall be subject to the laws and procedures prescribed by Title 52, Arts. 3264 to 3271, inclusive, RCS, 1925; and Art. 3265, of course, directs the special commissioners to determine damages resulting to the remainder of the property by reason of the condemnation of the property and *its employment for the purpose for which it is condemned.*

Appellees here state quite pertinently that: "Obviously the existence of access, or the lack thereof, to a new street being constructed upon the part taken is germane to the question whether and how much, the remainder has been damaged. Indeed, it would be impossible for the jury to determine the question of damage to the remainder unless this fact were elicited. The facts of access or non-access is as much an integral part of the entire picture included within 'the use to which the part taken is to be put' as is the height of the fill, the proximity to improvements, and any other physical fact bearing upon the subject."

Appellant's points are overruled. And we quote in this connection from the very recent case of Pennysavers Oil Company of Texas v. State of Texas, 334 S.W.2d 546,

548, where the San Antonio Court through Chief Justice Murray holds that:

"If a Freeway is built in such a manner as to deny a landowner any access to such highway, where he theretofore had full access to a conventional highway, then unquestionably his right of access has been taken from him, and the taker must pay him for his property right which it has taken from him. Grapotte v. Adams, 130 Tex. 587, 111 S.W.2d 690; State, By and Through State Highway Commission v. Burk, 200 Or. 211, 265 P.2d 783. This loss is generally shown by the before and after market value of the property."

All points presented on appeal are overruled and the judgment under review is accordingly affirmed.

CRAMER, J., not sitting.