**Edward L. HAYS et ux., Appellants,**

**v.**

**STATE of Texas et al., Appellees.**

**No. 15821.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 25, 1960.

Rehearing Denied Dec. 30, 1960.

**168**

McKool & Bader, Dallas, for appellants.

Henry Wade, Dist. Atty., A. D. (Jim) Bowie, Kenneth C. Dippel and Homer G. Montgomery, Asst. Dist. Attys., Dallas, for appellees.

THOMAS, Justice.

This is a condemnation suit brought by the State of Texas and County of Dallas against the appellants Edward L. Hays and wife, Ellese Martin Hays, for the taking on June 12, 1959 of three parcels of land totaling approximately 2.2 acres with improvements, for the widening of U. S. Highway 175. The landowners appealed from a judgment awarding to them the sum of $17,250, entered by the County Court of Dallas County at Law No. 1 on the answers of the jury to the usual "Carpenter Case" special issues. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979.

The first fourteen points of appeal complain of the action of the trial court in refusing to permit landowners to introduce evidence of the prices at which other tracts of land sold, which their two expert value-witnesses testified were comparable to the condemned property, which sales (common-

ly called "comparable sales") were considered by these witnesses in arriving at their opinions as to the value of the condemned land. It is our opinion that these points of appeal are well taken and that the trial court erred in holding that evidence of such comparable sales was inadmissible. Such errors were prejudicial to the appellants and probably resulted in the jury finding a smaller amount as the value of appellants' land; these errors require a reversal of the judgment in this case.

This is a companion case to State of Texas et al. v. Morse et al., 342 S.W.2d 165, and to which reference must be made for a full understanding of this case. The condemned Hays land is about two miles east of the Morse land; both are on U. S. Highway 175. The identical purported comparable sales with one exception are involved in both cases. The same expert value-witnesses were used by the landowners. Finally, the same highway improvements project required each condemnation suit. At the suggestion of the attorneys these cases were submitted and argued at the same time. They complement each other.

Condemnors petitioned for the condemnation of three parcels of land described by metes and bounds, located in the City of Seagoville and lying along the northeastern side of existing U. S. Highway 175 some 17 miles from the City Hall in Downtown Dallas. These three parcels which adjoin each other are: Parcel 193 of 36,399 square feet fronting 183 feet on Highway 175; Parcel 194 of 0.499 acres fronting 115 feet along the highway, and is the parcel upon which the most valuable improvements are located; Parcel 195 of 0.857 acres fronting 221.4 feet along the highway. Practically all of Parcel 193 and about one-third of Parcel 194 are burdened with a drainage easement granted to the State of Texas. The burdened land was considered separately from the remainder and the witnesses recognized that portion as dissimilar from the remainder.

No substantial difference existed in the testimony of landowners' and condemnors' expert value-witnesses, as to the depreciated value of the improvements upon the land involved. Each expert value-witness valued the land separately from the improvements as follows: (1) For landowners, Ardis Doak valued Parcel 193 at .25¢ per square foot, the front 100 feet of Parcels 194 and 195, totaling 36,000 square feet, at .50¢ per square foot, and the rear parts of Parcels 194 and 195 at .25¢ per square foot; and Roy Eastus averaged all land taken, being 95,395 feet, at .25¢ per square foot. (2) For condemnors, Joseph E. Smith valued the land in Parcel 193 at 1½¢ per square foot, the part of Parcel 194, 7198 square feet, in the easement at .03¢ per square foot, and the remainder of Parcels 194 and 195 at between .05¢ and .06¢ per square foot; and A. R. Hooper, Jr., valued substantially all of Parcel 193 at .02¢ per square foot, and Parcels 194 and 195 at approximately .06¢ per square foot. Thus the valuations of the land condemned exclusive of improvements were: by witness Eastus—$23,848.25; by witness Doak—$32,249.00; by witness Smith—$3,727; and by witness Hooper—$4,271.00,—all experts!!

Landowners' witnesses Ardis Doak and Roy Eastus were well qualified from training, experience and investigations they have made, to give their opinions of values as expert value-witnesses. They each described the land involved and the neighborhood in detail using photographs, surface and aerial, maps, diagrams and plats for clarity. Landowners' property prior to taking by condemnors was being used as a residence by appellants; also they operated kennels there for stabling and training dogs. The property is zoned for retail and local business use. A dog training tank or pond is located on Parcel 193.

After valuing the condemned property, each witness testified that there were recent sales of other similar properties in the vicinity which they had used in arriving at the value of the land being condemned considered as unimproved land. The witnesses described these other properties and the

sales on direct as well as on voir dire examination by condemnors. The Court sustained condemnors' objections and would not permit the witnesses to state the prices at which the other properties sold.

The excluded evidence relating to sales of comparable property was:

(1) Prices paid in sales referred to in State of Texas v. Morse, supra, as sales A, B, C and D in our opinion in that case, except that this subject Hays property is about 1½ miles distant from tract involved in A, 2 miles from the tract in B, 2 miles from that in C and 2 miles from the one in D.

(2) The price paid in sale from A. Rex Putnam to J. L. Mathis on May 25, 1956 of 9547 square feet of land located on a corner lot in Seagoville fronting Farmers Road about 250 feet from Highway 175 which is zoned for the same business use as the Hays property; said tract being about 1½ mile East of Hays parcels and of similar topography therewith except for the part burdened by the drainage easement. The Putnam—Mathis property as unimproved land was sold at a free and voluntary sale at its reasonable market value all according to landowners' expert value-witnesses at the price equal to 33¢ per square foot.

The objections urged to each of the sales of other lands were that each "fails to meet the elements of comparability and similarity" because (1) none of the tracts was burdened with a drainage easement, (2) the tracts were smaller than the three parcels involved, (3) the sales were too remote in time, (4) the other lands were too far removed in distance, (5) the land in sale A had access by an easement to a corner, (6) the lands in sales A, C and D were not in the municipal limits of Seagoville, and (7) tract in Sale B was on a corner.

"It has been said that on no other rule of evidence has there been a greater divergence of opinion among the courts than on the question whether evidence as to sales of similar property is admissible as substantive proof of the value of a particular tract of land or interest in realty." 32 C.J.S. Evidence § 593, p. 444.

Texas is among the majority of American jurisdictions that hold admissible the sale price or market values of other lands on land values in issue. 118 A.L.R. 869; 174 A.L.R. 386. However, it has not always been free from doubt as to whether Texas would hold with the majority because there have been decisions indicating approval of the minority rule that evidence of extraneous sales is inadmissible on direct examination and even on cross-examination. See dissent in Cole v. City of Dallas, Tex.Civ. App. Dallas, 229 S.W.2d 192 (n. r. e.) But since the decision of the Supreme Court in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, Texas has definitely taken its stand with the majority of the States holding evidence of the sale price of comparable property admissible. Nevertheless, difficulty exists in applying the test of similarity requisite to the admission of such evidence in condemnation cases. This difficulty is sharply outlined in this case where the trial court admitted no evidence of the sale price of other lands even in support of the factual basis of the expert value-witnesses' opinions of the value of the property condemned, whereas, another trial court in State of Texas v. Morse, supra, admitted evidence of a number of the same comparable sales given by the same witnesses in connection with the same highway improvement project in valuing other lands on the highway having many similar characteristics to the parcels involved here.

■ Evidence of sales of comparable properties may be offered under three conditions: (I) on direct examination of expert or lay witnesses as independent substantive evidence of the value of the property to which the comparison relates, or (II) on direct examination of the value-witness to give an account of the factual basis upon which he founds his opinion on the issue of value of the real estate in controversy, or (III) on cross-examination of the value-witness to test his knowledge, experience

and investigation and thus affect the weight to be given to his opinions. Condition (III) will not be discussed since not involved here, and the right to elicit such evidence on cross-examination is generally accepted. 19 Tex.Jur. pp. 233–234; Stewart v. Commonwealth of Kentucky, Ky., 337 S.W.2d 880.

Typical of condition (I) above is the case of City of Houston v. Pillot, Tex.Civ.App., 73 S.W.2d 585, 591, in which the witness Palmer Hutcheson (a name well known as that of a distinguished Texas lawyer) testified to the facts of a sale he had made of a block of land. It does not appear that Mr. Hutcheson qualified as a value-witness or gave any opinion of the value of the land being condemned. Over the objection that the sale was too remote in time (3½ years prior to the taking), of different shape and size, being on four streets with four corners, the evidence was admitted. In commenting upon this holding the Court of Civil Appeals said:

> "The questions of the degree of similarity and nearness of time and distance necessary in cases of this kind, to render testimony of sales of other property admissible in evidence, is not predetermined by any inflexible, hard and fast general rule, but must rest largely in the discretion of the judge, and the rules vary with the facts of cases. Lewis on Eminent Domain, Vol. 2 (2nd Ed.) § 443. In support of his text the author just mentioned cites cases in which the difference in time was from three or four to eight years, and the distance of the lands from each other was from half a mile to six miles. This general rule, that these questions are largely left to the discretion of the court, is also announced in 22 C.J. Sec. 855. See also, 17 Texas Jurisprudence, § 160."

The Texas Supreme Court in City of Houston v. Pillot, Tex.Com.App., 105 S.W. 2d 870, 872, (although reversing on other grounds) in referring to the comparable sales said: "On the whole the objections urged go to the weight, rather than the admissibility, of the evidence."

Of course, it is the function and duty of the trial court to determine the fact question of sufficient similarity of the respective properties before admitting evidence of other sales as independent substantive evidence of the value of the property being condemned. It is often said that this decision rests in the sound discretion of the trial court which will not be disturbed except in case of abuse of discretion. Someone has called this an "unhappy expression". Discretion differs from uncontrolled will and is not synonymous with judicial grace; and abuse of discretion does not connote any ethical or moral shortcoming. Our Supreme Court adopted the opinion of Commissioner Smedley in which he said: "The trial court's discretion is not unlimited and does not extend to the erroneous application of the law to undisputed facts. * * * Differently stated, the trial court abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts." Southland Life Insurance Co. v. Egan, Tex.Com. App., 126 Tex. 160, 86 S.W.2d 722, 723 (Syl. 3). In this case the facts upon which the test of similarity is based are undisputed. Therefore, the decision of the trial court in excluding the evidence of the sale price of other sales does not represent a choice between conflicting evidence, but is in our opinion an erroneous application of the law to undisputed facts, which is reviewable.

Appellees' objections that the proffered comparable sales are too remote in time to the taking here are not well taken. It does not appear there had been any material change in the real estate market in the neighborhood between the dates of the other sales offered and the date of taking of appellants' property. Of course, the nearer the date of the other sale is to the date of taking the less the likelihood of a market fluctuation, but the Texas courts have not attempted to test the admissibility of other sales in condemnation cases by the

calendar. Those rejected here are well within the period of time generally accepted. City of Houston v. Collins, Tex.Civ. App., 310 S.W.2d 697, sale three years after taking and 20–21 blocks distant; Curfman v. State, Tex.Civ.App. Dallas, 240 S.W. 2d 485, n. r. e.,—sale of lands one-half and one-fourth mile distant, 3 years and 5 years before taking; Joyce v. Dallas County, Tex.Civ.App., 141 S.W.2d 745, no writ history, but cited with approval by Texas Supreme Court in City of Austin v. Cannizzo, supra,—sale three years before taking and 1½ miles distant.

The distance between the condemned property and the property involved in an alleged comparable sale is important in determining whether both are in the same economic use area. Our Supreme Court holds that "evidence of recent sales of other property in the City of Austin, meeting the test of similarity, should be admitted," City of Austin v. Cannizzo, supra [153 Tex. 324, 267 S.W.2d 815], thus indicating that it is now settled in Texas, that evidence of "comparable and similar sales of comparable and similar properties located anywhere within the metropolitan trade areas, if a city property is involved, or within the same type of marketable land area, if rural property is involved" can be admitted. Rayburn—"Texas Law of Condemnation," p. 425, Sec. 140(2). Gulf & Interstate Ry. Co., v. Stephenson, Tex.Civ.App., 212 S.W. 215, also cited by Supreme Court in City of Austin v. Cannizzo, supra, admitted sale 4 miles distant.

Appellees' objections that some proffered comparable sales here involve properties outside the municipal limits of Seagoville are not valid. In Knollman et al. v. United States, 6 Cir., 214 F.2d 106, 108, it was held to be error to exclude evidence of recent comparable sales outside Crosby Township, where the condemned property is located, and not to permit the landowner to show circumstances within the economic unit of the Greater Cincinnati area within which operates the law of supply and demand so important on the question of market value.

"This law does not cease operating at the boundary of a township." See City of Chicago v. Harbecke, 409 Ill. 425, 100 N.E. 2d 616, where the mere fact that lands are in different municipalities or even counties from the condemned land will not render similar land sales inadmissible.

Appellees' objections that some of the proffered comparable sales involved land having access to a corner or are of a different size from landowners' property was held to go to the weight of the evidence and not to its admissibility in City of Houston v. Pillot, supra. Also, their objections that no lands compared were burdened with a drainage easement, as landowners' land here, is also without merit since only a portion of the subject land was so burdened and this portion was treated separately and valued differently from the remainder of landowners' land by the condemnors' expert value-witnesses, as well as landowners'.

Therefore, having examined the entire record in this case we are of the opinion that all of appellees' objections go to the weight rather than to the admissibility of the details of the other sales, which should have been admitted as independent substantive evidence of the value of landowners' property.

(II) Furthermore, in considering whether each expert value-witness should have been permitted to give the factual basis upon which he founded his opinion of the value of landowners' property, it must be kept in mind that the trial court has heard evidence and found as a fact that such witness is fully qualified to express an opinion of the value of the condemned property. It would seem to be an anomaly to accept such opinions and then reject the factual bases on which the opinions are founded. After finding that the witness is a fully qualified expert on real estate values, a court cannot logically reject his opinions that the sales of other lands which he used were of similar lands to that involved and were comparable to the land taken unless it is apparent to reasonable persons that such other lands are not similar and a sale

thereof not comparable. If this develops the qualifications of the expert to give any opinion are brought sharply into question.

"It is the general rule that an expert witness, having testified to an opinion, is permitted to give in evidence, either in direct or cross-examination, an account of the basis upon which he founds the opinion. If this testimony happens to be competent for that purpose it is admissible as independent evidence upon the issues in the case, but even though not so competent, it is still admissible as giving the basis for the previous opinion testified to and thereby enabling the jury to test the value of the opinion evidence." Mc-Cormick & Ray, Evidence, 2d Ed. p. 610, Par. 835.

"There is authority for the view that the testimony of a witness as to value should be limited on direct examination to the establishment of his qualifications and the statement of his opinion as to value and should not include the basis or reason for his opinion. However, it is generally held that a witness as to value may, and should, so far as this is practicable, detail the facts on which his estimate, inference, conclusion, or judgment is based, whether his testimony relates to the value of real or personal property or of services. Indeed, it is held that the estimate should be rejected where the basis for a test as to its reliability is not furnished by a statement of facts on which it is based, or where the basis of fact does not appear to be sufficient." 32 C.J.S. Evidence § 545, pp. 289–290.

In Cole v. City of Dallas, Tex.Civ. App., 229 S.W.2d 192, 193, (Syl. 2.) we said: "By necessity, expert witnesses are permitted to state their opinions as to the value of real estate together with basic facts upon which such opinions are founded. * * * Witnesses testifying as to value should be permitted to relate facts upon which such opinion is formed, either on direct or cross-examination. * * * Indeed, expert testimony is uncertain, at best, as a basis for an estimate by the jury

of the value of land. Jurors usually understand that." In this case, the jury heard condemnors' expert value-witnesses (as well qualified as landowners' according to their testimony) and those of the landowners' solemnly and under oath value the land in controversy with a variance of about one to ten according to which party employed them. Unless the jury knows the factual basis of these varied opinions one expert would be as valuable as another, and the jury is left to grope in a maze of unsubstantiated opinions in trying to arrive at the true value of the land taken. By excluding evidence of all other sales which the expert value-witnesses said they considered as comparable sales of similar property, a blindfold was placed over the mind of each juror.

In the recent case of Stewart v. Commonwealth of Kentucky, Ky., 337 S.W.2d 880, 884, the Court of Appeals of Kentucky reversed because evidence of what expert witnesses said was comparable sales of property similar to that being condemned was excluded, stating: "Therefore, where the properties are reasonably similar, and a qualified expert states his opinion that they are sufficiently comparable for appraisal purposes, it is better to leave the dissimilarities to examination and cross-examination than to exclude the testimony altogether."

Chief Judge Parker in United States v. 5139.5 Acres of Land, etc., 4 Cir., 200 F.2d 659, 662, (Syl. 8.) in reversing because of error of the trial court in excluding testimony of expert value-witnesses who were asked to give the grounds or factual bases of their opinions of value of the land involved by detailing the facts of voluntary sales of similar property in the vicinity, made at or about the same time, stated: "And although there is some conflict in the decisions, we think the better rule is that where the opinion of an expert witness is based in part on such sales, he should be permitted to give details of the sales upon which he bases the opinion, although the facts so stated do not become

independent evidence. * * * If the expert has made a careful inquiry into the facts, he should be allowed to give them as the basis of the opinion he has expressed. If he had not made careful inquiry, this will be developed on cross examination and will weaken or destroy the value of the opinion." Judge Parker recognizes that the trial court must retain control over the admissibility of such evidence, saying: "The witness within reasonable bounds should have been allowed to give the jury the facts upon which his opinion as to value was based."

■ We conclude, therefore, that each expert value-witness having been held qualified to express an opinion as to the value of the land being condemned should be permitted to give the details of sales upon which he bases such opinion, after he has stated that the sales are of property sufficiently comparable to the property involved for appraisal purposes, and were from his knowledge or investigation voluntary sales in the economic area of the condemned property made within a time during which no material changes in market conditions had occurred. But should it appear that reasonable minds cannot differ from the conclusion that the evidence of another sale lacks probative force because of dissimilarities, remoteness in time and distance, or not being voluntary, then the trial court should exclude evidence of the details of such other sales.

Tested by the foregoing principles, we are of the opinion that the court erred in excluding evidence of the details, including sale price, of each of the comparable sales referred to herein. They each were within the vicinity or economic area of appellants' properties; the sales were about the same time as the taking as far as the market is concerned and well within the generally accepted period; all were commercial or business properties; except for the portion of land burdened with the drainage easement, physical similarity as to topography and location was apparent. In fact, it seems to us that the similarities greatly exceeded the differences. As has been said so many times by the Texas courts "the objections urged go to the weight, rather than the admissibility of the evidence."

■ Appellants complain of the action of the court in refusing to permit an engineer-witness to testify as to the quantity of dirt necessary to fill the dog training tank or pond and the cost thereof. This pond is on that part of the Parcel 193 burdened with the drainage easement which provides that the "parcel of land is to be used for construction of an earth, water storage basin and overflow drainage channel to facilitate drainage of Highway 175." The easement owner (State of Texas) is the dominant tenant and is entitled to free and undisturbed use of the property for the purposes of the easement. Sheppard v. City and County of Dallas Levee Improvement District, Tex.Civ.App. Dallas, 112 S.W.2d 253. The rights of appellants are subservient to the rights of the State, and they have no right to remove dirt from nor add dirt to the land over the objection of the easement owner, unless such objection clearly appears to be fraudulent or wholly arbitrary and unreasonable. Wesco Materials Corp. v. Dallas County Levee Improvement District No. 5 et al., Tex.Civ. App. Fort Worth, 320 S.W.2d 243, n. r. e. State of Texas v. Albright, Tex.Civ.App. Dallas, 337 S.W.2d 509 is not in point because landowners' property there was not burdened with a dominant estate as here. Appellant's fifteenth and sixteenth points of error are overruled.

It is our opinion, from an examination of the record as a whole, that the cumulative effect of the errors in excluding all evidence of the sale price of other lands herein discussed was such as was calculated to cause, and probably did cause, the jury to give the answers it did to all issues which support the entry of an improper judgment for the value of the lands taken and for damages to the remainder in an amount even less than testified to by one of condemnors' expert value-witnesses. The market value of appellants' property is best

proved by the sale price of comparable lands which meet the tests herein set forth. Experienced business men rely upon these prices—not upon hired opinions of experts not supported by comparable sales.

The other points of appeal have been considered and are overruled. In view of another trial they need not be discussed.

Therefore, the judgment is reversed and the cause remanded for a trial.