**STATE of Texas et al., Appellants,**

v.

**James Alvin MORSE et al., Appellees.**

**No. 15850.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 25, 1960.

Rehearing Denied Dec. 30, 1960.

Henry Wade, Dist. Atty., Homer G. Montgomery, A. D. (Jim) Bowie and Kenneth C. Dippel, Asst. Dist. Attys., Dallas, for appellants.

McKool & Bader, Dallas, for appellees.

THOMAS, Justice.

This is a condemnation suit brought by the State of Texas and County of Dallas, appellants, against James Alvin Morse and wife, appellees, for the taking of 27,750 square feet of land located in a zoned business district of the City of Kleberg. Condemnation is sought for the purpose of perfecting the widening and improving of existing U. S. Highway 175. Based upon the jury's answers to special issues submitted, the County Court of Dallas County, at Law, No. 2 awarded the property to appellants and assessed as damages, the sum of $18,383.50, for which landowners were given judgment. The condemnors appeal.

Appellants' points of appeal (none of which are well taken) are that the court abused its discretion and erred to appellants' prejudice in admitting evidence of sales of other tracts of land claimed to be similar to the Morse property, to-wit: (A) from Parker & Solomon to American Petrofina Company of Texas, (B) from Rex Putnam to Bob Hayes, (C) from William Gore to George Marshall, (D) from Marvin Adams and wife to G. H. Floyd and (E) from E. E. Guthrie to J. C. Rollins.

On the date of taking (September 4, 1959), appellees owned 44,000 square feet of land having a 150 foot frontage on U. S. Highway 175. Upon the 27,750 square feet condemned, there was located a commercial garage building and a five-room residence. The tract was an inside lot within the Oak Hill business district of the City of Kleberg and was zoned for commercial use by that City, permitting use for businesses such as grocery stores, service stations, laundries, skating rinks, motels, auto parts stores, lumber yards, etc. U. S. Highway 175, prior to instant improvements, was primarily a two-way, two-lane roadway with a section in front of subject property which operates as a four-lane divided highway for about eleven or twelve hundred feet.

U. S. Highway 175 is the main arterial highway in Southeast Dallas County, going from Dallas to Balch Springs, to Kleberg and Seagoville in Dallas County, on to Kaufman, Athens, Palestine, etc. It is the main and only U. S. Highway between U. S. Highway 80 (Dallas-Shreveport) and U. S. Highway 75 (Dallas-Houston). The

Dallas County cities are contiguous in the order named except for the unincorporated Rylie Community, lying partly between Dallas and Balch Springs, but which at the time of the trial was in process of being annexed to Dallas. All are within the Dallas Metropolitan area, and with all other cities and towns in Dallas County have experienced phenominal growth in recent years.

Appellees proffered Artis Doak and Roy Eastus as expert witnesses to the value of the condemned property, whereas, appellants proffered Joseph R. Smith and Howard Dunham, Jr. as like expert witnesses. Also, Jack Reynolds qualified as an appraiser of the depreciated value of the improvements on the subject land. Each witness recited an impressive record of training and experience. No question was raised as to the witnesses' respective qualifications. Each appraised the improvements separately from the land as follows: Eastus—$12,245.20; Doak—$11,020.40; Smith—$9,730.00; Dunham—$10,135.00; and Reynolds—$11,017.00. These valuations of the improvements are well within the range of expected differences in the opinions of experts according to the viewpoint of their employers.

Appraisals of the land considered as unimproved land show no such agreement among the experts. They were: Eastus—$13,875 @ $0.50 per square foot; Doak—$16,650 @ $0.60 per square foot; Smith—$2,670 @ $0.07½ per square foot; and Dunham—$3,300 @ $0.12 per square foot. The opinions of these experts were properly received in evidence to aid the "unlearned laymen" on the "untutored jury". The jury's findings of value approximate the mean of the experts' opinions.

Witnesses Doak and Eastus testified that the sales objected to were each of property comparable to the Morse property, and were considered in arriving at their opinions of value of the Morse property. After appellants examined landowners' expert value-witnesses on voir dire, each was permitted to testify over appellants' objec-

tions, regarding the "comparable sales" as follows: that each was a free and voluntary sale at the reasonable market value of the property sold; that each tract sold was zoned or used for business or commercial purposes as the Morse property; that each tract fronted on U. S. Highway 175 and was of the same topography as the Morse tract. Specifically the sales were:

*Sale A.* On October 30, 1958, Parker & Solomon sold to American Petrofina Company a tract 150' x 100' (15,000 square feet) which is an inside lot near Belt Line Road in the City of Kleberg about ¼ to ½ mile from the Morse lot. The tract was unimproved and was bought for a service station; an easement to Belt Line Road was included in the sale thus giving the tract some of the advantages of a corner lot. The tract sold at a price of $0.57 per square foot, of which 5% according to witness Doak and "something less than 10%" according to witness Eastus, should be attributed to the easement

*Sale B.* On January 6, 1960 Rex Putnam sold to Bob Hayes a tract about 100' x 147', which is an inside lot in the City of Seagoville which City adjoins Kleberg on the Southwest. The tract will be on a corner facing a service road when Highway 175 is widened. The tract is about 4 miles Southeast from the Morse tract near the main shopping center of Seagoville and is the unimproved remainder after the front part had been taken for Highway 175 widening. The tract sold at $1.25 per square foot.

*Sale C.* On June 30, 1959 William Gore sold to George Marshall a tract 75' x 183' (about 14,000 square feet), which is an inside lot in the Rylie Community then being annexed to the City of Dallas, adjoining Kleberg on the Northwest. It is located about 2 miles from the Morse lot. The tract sold at $.47 per square foot.

*Sale D.* On February 13, 1957 Marvin Adams sold to G. H. Floyd a tract fronting 181 feet on Highway 175 having a

total area of 35,000 square feet. It is an inside lot in the City of Kleberg ¼ mile west of the Morse tract. There were some improvements on the lot. The sale price of this property was not given in evidence.

*Sale E.* On February 29, 1956 E. E. Guthrie sold to J. C. Rollins an inside lot 7,600 square feet in an area also located in a shopping area of the Rylie Community, and about 2 miles from the Morse lot. The lot was improved with a small sheet iron building. After allowing for the value of the building the lot sold at $0.52 per square foot.

Appellants' objections were: To sale A, because an access easement to Belt Line Road was involved. To Sale B, because (a) the tract sold is three to four miles from subject property, (b) is in a different city with different taxes, fire and police protection, and other municipal services, (c) is the sale of the remainder of a larger tract facing on an access road, and (d) lies adjacent to a shopping center more developed than that near the subject Morse property. To sale C, because the tract is 2 miles from subject Morse property, in Rylie business district on a two-lane highway and unimproved. To sale D, because there was a lease upon the property at the time of the sale. To sale E, because "located in a community, an unincorporated community, far nearer the City of Dallas than subject property, in a different area, of a different type."

Condemnors' expert value-witnesses testified to the sale prices of other lands they said were comparable to the Morse property. Of course, each party vigorously cross-examined the witnesses of the other and by accentuating the dissimilarities and minimizing the resemblances of the properties said to be comparable to the Morse property sought to lessen the weight of the adverse witnesses' testimony. The jury obviously were aided more by that type of testimony than by the widely divergent opinions of the witnesses. "Such sales, when made under normal and fair conditions, are necessarily a better test of the values than the speculative opinions of witnesses; for truly here is where 'money talks'." Nichols on Eminent Domain, 3rd Ed. Vol. 5 p. 275.

We have discussed the principles involved here at length in our opinion in Edward L. Hays et ux. v. State of Texas et al., 342 S.W.2d 167. That case is complementary to this case. Suffice to say here, in the language of our Supreme Court in City of Houston v. Pillot, Tex. Com.App., 105 S.W.2d 870, 872, it is our opinion that "on the whole the objections urged go to the weight, rather than the admissibility, of the evidence" objected to. The evidence clearly supports the finding of the trial court that each of the sales of other properties testified to meets the tests of similarity required for admissibility as substantive evidence of the value of the Morse property as well as to show the factual basis upon which the expert value-witnesses founded their opinions.

Appellants' points of appeal are overruled.

The judgment of the trial court is affirmed.