**CITY OF AUSTIN, Appellant,**

v.

**T. M. SALYER et al., Appellees.**

No. 11675.

Court of Civil Appeals of Texas.

*Austin.*

May 28, 1969.

Rehearing Denied July 23, 1969.

H. Glenn Cortez, City Atty., Austin, Sears & Burns, Robert L. Burns, Houston, for appellant.

Les King, Austin, for appellees.

PHILLIPS, Chief Justice.

This is an appeal from the judgment from the County Court in a condemnation proceeding initiated by the City of Austin, Appellant, against T. M. Salyer, and others, to acquire a tract of land containing 222.2 acres for a public recreational reserve. This reserve will include parks, playfields, a large reservoir and an addition to an electric generating system. The develop-

ment is commonly known as the Decker Lake Project.

Special Commissioners awarded Appellees the sum of $70,985.00 for their property. Appellees filed objections to this award and the case was tried before a jury. Upon a jury finding that the market value of the land was $124,432.00, the trial court entered judgment awarding Appellees the additional sum of $53,447.00, together with interest at the rate of six percent per annum from April 28, 1966.

Appellant filed an amended motion for new trial which was presented and heard. The court overruled this motion after hearing evidence on the possible disqualification of a juror and of jury misconduct. Appellant has duly perfected its appeal to this Court.

We affirm.

Appellant is before this Court on fourteen points of error, the first being that of the trial court in admitting in evidence the testimony of Appellee Salyer that he was blind in one eye.

Appellant made no objection to the introduction of this testimony; consequently, any complaint at this late date has been waived. Texas Rules of Civil Procedure, rule 372. In any event, if this was error, it was harmless. Tex.R.Civ.P. 434.

We overrule this point.

Appellant's points two to nine, grouped together for argument, complain of seven sales of nearby land admitted in evidence.

All of these sales were of property in the neighborhood of one mile or one mile and a half, or less, of the subject property. All are included, more or less, in an area designated by the Austin master plan as being most suitable for small tract development. The principal objections to the "comparability" to these sales were that some were in a water district while the subject property is not; that some few had frontage on U. S. Highway 290 while the subject property is on a lesser road. That some were sold after December 22, 1964

which was the date that the City announced its intention to build the Decker Lake Project. Others were sold after April 28, 1966 the date of "taking" of the subject property. These latter arguments are that the knowledge of the project enhanced the value of the property due to the public recreational facilities envisioned.

In April of 1966 the Commissioners awarded Appellees' $305 an acre while the jury verdict at the trial in question awarded them $560 an acre. The comparable sales objected to above were for $700 per acre (March 4, 1964); $800 per acre (March 1, 1965); $700 per acre (June 19, 1964); $560 per acre (December 1, 1964); $1,000 per acre (July 6, 1965); $800 per acre (December 1, 1965); $550 per acre (September 22, 1966); $650 per acre (October 17, 1967).

Thus it can readily be seen that the Commissioner's award was patently low. It is a remarkable coincidence that in a separate and distinct lawsuit tried some two months later (City of Austin v. John B. Flink, our Docket No. 11,676, a companion case decided this day) involving a tract adjoining the tract herein, the jury found only a $12 per acre difference from the jury verdict at bar.

In answer to Appellant's objection that some of the comparable sales were in a water district while some were not, there is evidence that this difference is immaterial. There is evidence that the tracts outside the water district are, as yet, not ready for development and that when they are, water will be readily available to them. This would include the subject property. There is also evidence that when the proper time comes for development, roads can be easily built along or through the subject property.

With respect to the property on U. S. Highway 290, while several hundred feet of frontage thereon sold for $1,000 per acre in 1965, that with little frontage thereon sold for $800 in 1965. The difference here is manifest.

 We are not impressed with Appellant's contention that the comparable sales should have been excluded because of the enhancement of value due to the announced location of the public park and reservoir. In the first place, there is evidence that the park area will be entirely surrounded by a chain link fence prohibiting public access except in certain locations. That this fact alone would preclude any enhancement such as would possibly occur had the project been an easily accessible private recreation venture similar to those surrounding the Highland Lakes. In the second place, this Court takes judicial notice of the fact that land values surrounding the City of Austin have been accelerating each year. To fail to take notice of this acceleration would be grossly unfair to the Appellees. The court did instruct the jury to ignore any rise in value due to the recreation project and reservoir. We know of nothing further he could have done to eliminate this factor from the condemnation value of the land. The jury was aware of Appellant's objections to these tracts as comparable sales; consequently, they went to the weight rather than the admissibility of the evidence, Hays v. State, 342 S.W.2d 167 (Tex. Civ.App., Dallas 1960, error ref'd n. r. e.). The trial court has considerable discretion as to the admissibility of comparable sales and he did not abuse this discretion here.

We overrule Appellant's points two through nine.

Appellant's points ten and eleven, briefed together, are the error of the court in overruling Appellant's objection to Paragraph XII of the charge of the court complaining of the use of the phrase "any increase, if any" and the failure of the instruction to state the date of the official designation of the property by the City Council; in refusing to submit to the jury the instruction requested by Appellant instructing the jury that it could not take into consideration the purpose or results of the City of Austin designating the project area and acquiring property and constructing facilities within such area and that it could not take into consideration increase in market value, if any, since December 22,

1964, resulting from the designation and acquisition of property and construction of facilities for the Decker Lake Project.

We overrule these points.

Paragraph XII of the court's charge is as follows:

"Since the land under condemnation is within the boundaries of the Decker Lake Project, you are instructed that in arriving at your answer to Special Issue Number I, you shall not take in consideration any increase in value, if any, which may have accrued to defendants' land due to the Decker Lake Project."

Appellant contends that by the use of the word "any" prior to the use of the word "increase" the court reflects its own negative view on a disputed issue of fact and, in effect, assumes that there was no enhancement in values of the properties in the area surrounding the Project. Consequently, that it was a comment on a disputed fact.

We do not agree with this interpretation. The word "any" is defined in Black's Law Dictionary (Fourth Edition) as meaning: "Some; one out of many; an indefinite number * * * It is often synonymous with 'either' * * * and is given full force of 'every' or 'all.'" Webster's Collegiate Dictionary (Fifth Edition) defines "any" as: 1. Being one (or, pl., some) indiscriminately of whatever kind; no matter what one; * * * 2. Being one (or, pl., some) indiscriminately of whatever quality; not none; no matter how great or small; * * * 3. That is unmeasured or unlimited; * * *" For a judicial interpretation of the word see Hime v. City of Galveston, 268 S.W.2d 543 (Tex.Civ.App., Waco 1954, error ref'd n. r. e.).

It should be noted at the outset that the trial court instructed the jury that they were not to consider any enhancement, if any, which might accrue due to the Decker Lake Project. There is also testimony in the record that the Decker Lake Project did not enhance the value of prop-

erty in the vicinity. The instruction that was given by the trial court in the present instance followed the language used by the Court in State v. Cartwright, 351 S.W.2d 905 (Tex.Civ.App., Waco 1961, error ref'd n. r. e.) wherein it was held to be error not to give the following instruction:

"* * * 'Since the strip of land under condemnation is within the right-of-way for a highway which the State of Texas is acquiring, you are instructed that in arriving at your answer to Special Issues numbers one and two you shall not take into consideration any increase in value, if any, which may have accrued to defendant's land due to location of the highway on such site.'"

To the same effect see Uehlinger v. State, 387 S.W.2d 427 (Tex.Civ.App., Corpus Christi, error ref'd n. r. e.) and the authorities cited therein.

In Naumann v. Urban Renewal Agency of the City of Austin, 411 S.W.2d 803 (Tex.Civ.App., 1967, error ref'd n. r. e.) the Court held that date of taking for purposes of redevelopment and reuse by the City Urban Renewal Agency was the date determinative of market value and thus when the tract is condemned damages shall be the market value of the property in the market where it is located at the time of the hearing. The Court further held that there was no evidence in the record, either offered or introduced, as to the value of the property in question at any date other than the date of taking. In the present instance, neither the Appellant nor the Appellees offered any testimony relating to the market value of the property sought to be condemned other than the market value of the property as of March 30, 1966. See also Uehlinger v. State, supra.

Appellant's points of error twelve and thirteen, briefed together, are the error of the trial court in refusing to grant Appellant a new trial on the ground that the juror Jack Myers was disqualified under the provisions of Vernon's Ann.Tex.Rev. Civ.Stat. art. 2134 (1925), to serve as a juror in this case; in refusing to grant

Appellant a new trial on the ground that on voir dire examination of the jury panel the juror Jack Myers was guilty of material misconduct which, when considered with the whole record, resulted in injury to Appellant.

We overrule these points.

The voir dire examination of the jury panel was not reported. Appellant did not make a formal bill of exceptions to any matters relating to the jury.

Testimony was taken later at a hearing on an Amended Motion for New Trial before the same Judge who had tried the case. At this hearing (where one of the jurors testified "The case is just so old I don't remember what I really said"), several members of the jury panel who awarded the verdict in question were interrogated. The interrogation was quite long and quite thorough.

Juror Jack Myers testified that on voir dire he had made mention of the fact that he had been in the real estate business. This admissison was not pursued further by counsel for Appellant. Continuing on voir dire, the panel was asked if any of them knew anyone who lived on Decker Road or Blue Bluff Road. At this point, juror Myers raised his hand and admitted that he had done some real estate evaluation work for a Major Lewis who lived in the vicinity and had been paid for it. This admission was not pursued further by counsel for Appellant. It is difficult from reading the transcript of the proceeding to ascertain just what Mr. Myers did for Major Lewis. When asked if he arrived at the value per acre of Major Lewis' property he replied, "not concretely to the extent that I ever gave him a figure or ever actually put down a figure." It seems that he gave Major Lewis a certain range of values within which his property lay. This range was apparently somewhere between $700 to $1,000 per acre. This property is approximately one-half mile from the subject property.

On the other hand, the Flinks, whose property abuts the subject property, had asked Myers to evaluate their property and he had declined, stating, "Well, I just told him that I was not interested, and that I had been helping work a little bit on Mr. Lewis' property, *and I didn't know enough over there to help him*, and I didn't care to fool with any of that stuff out there." (Emphasis added).

Myers admitted on further questioning that he was familiar with several other sales in the Decker Community and had talked to some of the people involved. He also admitted having purchased fresh eggs for a period of time from a farm family in the area. He denied, however, ever having made any appraisals for any of these people. Further, he denied that he used any of this information in arriving at a verdict. He stated that the only factors he had used in arriving at his own value per acre figure ($540.00) of the subject property were those put in evidence at the trial.

Whether or not Appellant's counsel on voir dire asked the panel if any of them was acquainted with anyone in the Decker Community or the Decker area which is in dispute. Thus a question of fact is raised.

Tex.Rev.Civ.Stat., art. 2134 (1925) provides in pertinent part:

"The following persons shall be disqualified to serve as jurors in any particular case.

\* \* \* \* \* \*

2. Any person interested, directly or indirectly, in the subject matter of the suit.

\* \* \* \* \* \*

4. Any person who has a bias or prejudice in favor of or against either of the parties."

Compton v. Henrie, 364 S.W.2d 179 (Tex.1963) defines the terms "bias" and "prejudice" in Article 2134:

"Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference

that he will not or did not act with impartiality. Prejudice is more easily defined for it means prejudgment, and consequently embraces bias; the converse is not true."

■ Whether a juror is biased or prejudiced, however, may be a factual determination to be made by the Court. Swap Shop v. Fortune, 365 S.W.2d 151 (Tex. 1963). The order of the trial court overruling Appellant's Amended Motion for New Trial implies a finding of fact that Myers was neither biased nor prejudiced. The evidence does not establish the existence of bias or prejudice as a matter of law.

This ruling also implies that Myers did not conceal any facts on voir dire as a result of questions of a general nature addressed to the panel as a whole.

Appellant's point of error number fourteen is the error of the court in refusing to grant Appellant a new trial on the ground that the jury, during its deliberations, was guilty of material misconduct which, when considered with the whole record, resulted in injury to Appellant.

We overrule this point.

After the jury retired they took a ballot as to what value per acre they should place on the subject property. These figures ranged from $250.00 an acre to $750.00 an acre without improvements. These figures were then lowered or raised as the discussion continued. There is evidence that the high price of land in Burnet County was mentioned; that the fact that the Appellees could not replace their land for $225 per acre was mentioned along with statements that the Appellees should get enough money for their land to replace it with similar property. There were also statements that Appellee Salyer had had a heart attack and that it was too bad that he had lost an eye.

However, the jury was admonished from time to time to consider only the evidence presented at the trial. It is apparent on reading the record of their conduct in the jury room that the jurors made an effort to consider only this evidence.

From the sales presented in evidence, prior to 1966, the jury increased the value for each year up to 1966 by certain rates expressed in terms of percentages. The fact that the land in the area had increased in value from year to year was testified to by Appellant's own valuation witness and he too used certain percentages which, we must presume, were compatible with his own judgment. Consequently, we see no harm in the jurors, as fact finders, applying a percentage of appreciation to certain sales placed in evidence in an attempt to arrive at the verdict that the law required them to render.

Certainly any evidence of heart attacks, value of land in Burnet County, etc. had no place in their discussion and, if it was discussed, it was misconduct. However, Tex.R.Civ.P. 327 states that before a judgment may be reversed for jury misconduct it must be established (1) that the misconduct occurred and (2) that on review of the record as a whole it appears that injury probably occurred to the complaining party. Trousdale v. Texas & New Orleans Railroad Co., 264 S.W.2d 489 (Tex. Civ.App., San Antonio 1953, aff'd 154 Tex. 231, 276 S.W.2d 242 (1955)); Navar v. State, 344 S.W.2d 188 (Tex.Civ.App., El Paso 1961, no writ).

■ In applying these criteria, we are faced with the implied finding of the trial court who originally tried the case that the misconduct did not occur. From our own review of the record we hold that, if the alleged misconduct did occur that no injury happened to Appellant therefrom. That the error, if any, was harmless. Tex.R. Civ.P. 434.

Appellees' motion not to consider and to strike appellant's points of error Nos. Twelve, Thirteen and Fourteen is overruled.

We affirm the judgment of the trial court.

Affirmed.