Oscar F. HOLCOMBE, Appellant,

v.

CITY OF HOUSTON, Appellee.

No. 13497.

Court of Civil Appeals of Texas.

Houston.

Nov. 9, 1961.

Sewall Myer, Houston, for appellant.

R. H. Burks, City Atty., Hofheinz, Sears, James & Burns, Robert L. Burns, Houston, for appellee.

BELL, Chief Justice.

This is a condemnation case. The appellee condemned 4.002 acres of land belonging to Oscar F. Holcombe and the jury found the value of the land taken to be $95,700 on June 1, 1951. The trial court also awarded interest on this amount from January 1, 1953 to October 15, 1954. This represents an award of $23,913 per acre or 56 cents per square foot. Mr. Holcombe was dissatisfied with the amount awarded by the jury and has appealed.

Appellant has assigned 13 Points of Error. However, they really present these basic questions:

1. Did the court err in allowing Mr. Sturman to testify as to the price at which he sold certain tracts of land? The objections to his testimony in connection with each tract were that the tract was not sufficiently comparable to the tract condemned; that the tract sold was too distant from the tract condemned, and that the sale was too remote in point of time. This testimony was offered as substantive evidence indicative of the value of Mr. Holcombe's tract. Mr. Sturman himself made such sales. He did not use them, as is usually the case, merely as a basis for his testifying as an expert as to the value of Mr. Holcombe's tract and he did not express an opinion as to the value of the condemned tract.

2. Did the court err in allowing the expert witness Ringer to testify as to the sales price of various tracts of land? Mr. Ringer testified as to the sales price of numerous tracts of land, including those testified about by Mr. Sturman. However, testimony concerning the sales price of such tracts was not admitted as substantive or original evidence but was admitted only as being one of the factors considered by the expert witness in arriving at his opinion as to the value of the tract condemned. Here too the objections as to each tract were that the tract was not sufficiently comparable to Mr. Holcombe's tract; that the tract was too distant from the tract condemned, and that the sale was too remote in point of time.

3. Was the verdict of the jury so against the overwhelming weight and preponderance of the evidence as to be clearly wrong?

The property condemned was a strip about 1,500 feet long running in a north-westerly-southeasterly direction on the easterly side of and abutting Winkler Drive. It was about 175 feet wide at its northerly end where it touched Pine Gully and tapered gradually so that it was 50 feet wide near its southerly end. The north 30 feet was encumbered by a drainage easement. Its width at the south line of the easement was 173 feet. From this point to a distance south of 548 feet it tapered from a width of 173 feet to 152 feet. From this point to a point 282 feet south the depth decreased from 152 feet to 103 feet. From this point to a point 210 feet south the depth decreased from 103 feet to 61 feet. For the next 200 feet the depth decreased from 61 feet to 50 feet and in the last 200 feet the depth decreased from 50 feet to a point. The tract fronted on Winkler Drive, which was a well traveled street and was unrestricted. On the east the tract is bounded by the easterly one-half of the abandoned right of way of the Houston-Galveston Interurban. Such right of way is 1,448.87 feet long by 50 feet wide.

To the north of the subject tract across Pine Gully on either side of Winkler Drive were numerous tracts of vacant, unrestricted acreage. However, to the south, east and west of the subject tract were developed residential subdivisions. Immediately across Winkler from the tract were eight unrestricted lots. A Serv-All Store was located on some of them. The subdivision to the east and southeast had access to the tract only by going south to Park Place Boulevard and back north on Winkler. The intersection of the last named streets would be about ¾th of a mile southeast of the tract condemned.

The above two paragraphs pretty well describe the nature and immediate sur-

roundings of the subject tract. There seems to be little, if any, dispute that the tract was suitable as business of commercial property, certainly as to a major portion of it.

Now let us notice the character of the neighborhood which may be considered as being in a like environment as the subject tract, though such neighborhood does not join or is not immediately associated with the subject tract.

The subject tract on Winkler Drive is about 7½ miles southeast of downtown Houston. On June 1, 1951, which was before the completion of the Freeway, probably the most accessible route to southeast Houston and its outskirts was to travel from downtown on Leeland Avenue to Telephone Road, thence on Telephone Road to a point about 2 miles northwest of the subject tract. At such point Telephone Road continued in a southeasterly direction. At the above point Winkler Drive branched off from Telephone Road and continued about 3,600 feet in a direction a little east of south where it gradually curved to a southeasterly direction. It continued past the subject tract until it intersected with Park Place Boulevard, about 2,100 feet southeast of the subject tract. The subject tract would be about a mile and a third from the intersection of Telephone Road and Winkler Drive. About 2,000 feet northwest of this intersection Telephone Road crosses Griggs Road, a street which runs in a northeast-southwest direction. From its intersection with Winkler Drive, Telephone Road continues southeast about 4,000 feet, where it intersects Park Place Boulevard, thence on to the City of Alvin. Park Place Boulevard runs east to Winkler Drive. The distance between Telephone Road and Winkler Drive along Park Place Boulevard is approximately 6,000 feet. (We should here explain that our distances are what we consider to be fairly accurate measurements based on calculations made from appellant's Exhibit 5, which the record shows to be a map with a scale of 400 feet to the inch). Northeast of the intersection of Telephone Road and Griggs Road about 1,200 feet the Houston-Galveston Interurban right of way proceeds in a direction just south of east and north of Winkler Drive. The distance of the right of way north of Winkler is from about 1,200 feet on the west at Telephone Road to where it abuts the subject property. To the north of the right of way from Griggs Road to Woodridge Street, which is a distance of about 4,000 feet, is a large residential area known as Pecan Park. Woodridge is the only access street from Pecan Park to Winkler Drive across the right of way.

Telephone Road and Winkler were both well traveled, though Telephone was more heavily traveled than Winkler, particularly at the location of appellant's tract.

Within the area we have outlined, that is, Griggs Road on the northwest, the right of way on the north, northeast and southeast, Park Place Boulevard on the south and Telephone Road on the southwest, were several fairly well developed residential subdivisions. They were all in some stage of settlement at all material times though they were more thickly settled in June, 1951 than in 1946 and 1947. Greenway Addition was just across Winkler from the subject tract to the west and southwest. Adjoining Greenway on the southwest was Lum Terrace. South of Lum Terrace and the southwest part of Greenway was Santa Rosa. South of Greenway was Park Place Terrace and part of Park Place. North of Lum Terrace was Sturman Park. Greenway and Park Place southeast of Winkler were the larger of these residential subdivisions. There were connecting streets from these subdivisions to Winkler Drive at points south of Pine Gully. They also had access streets to Telephone Road at points south of the intersection of Telephone and Griggs, the nearest being about a mile and a third south. Plum Lane connected Telephone and Winkler about 1,600 feet southeast of the intersection of Telephone and Winkler.

Just outside of the area outlined were other residential subdivisions. On the west side of Telephone was Golfcrest, a large subdivision. On the west of Telephone between Griggs and the intersection of Telephone and Winkler was Oak Acres. Adjoining Golfcrest on Telephone was Parkview Landelle.

Along Telephone from Winkler to Park Place Boulevard were various businesses, such as a shopping center and a theatre. Along Telephone between Griggs and Winkler and thence along Winkler to Pine Gully there were extensive tracts of unrestricted acreage. We mention this because appellant places emphasis on his tract being adjoined on three sides by residential subdivisions. However, the subdivision on the east is, as we have previously noted, not accessible to appellant's tract except by way of Park Place Boulevard to the southeast. Too, immediately north across Pine Gully from appellant's tract is available unrestricted acreage.

All of the tracts of land that were sold by Mr. Sturman and all of the sales testified to by Mr. Ringer, except two, were located within the area outlined above. They were all within a distance of two miles from appellant's tracts. They were all sold between November, 1946 and 1951, during which time the evidence shows increasing post-war activity in the whole area. They were all generally subject to similar environment.

While appellant urges remoteness in time and distance, he stresses a want of comparability based on difference in size, shape and location with respect to restricted residential areas that commercial establishments could serve.

We are of the view that appellant would have had the trial court and would have us be more restrictive than the settled law requires. As to comparability, appellant in effect urges there must be practical, if not absolute, identity in shape, area and environment. There is no such legal requirement. The law does require comparability but not that the tracts be identical. Comparability is a relative term and is used in cases of this kind more in the sense of similarity to such degree that the sales price of one will be an indication of the value of the other and will thus assist in determining the value of the tract in question.

All of the sales were within four years of June 1, 1951 except two. These two were within 4½ years. Considering all evidence, we deem them not too remote.

We need not deal with each individual tract in detail. We will notice particularly those which appellant has emphasized in his brief, which are the ones we, after carefully reading the whole record, deem of controlling importance.

Mr. Sturman testified as to the sale by him of Tract 22, which is abutting Winkler Drive on the south and is about $2,800 feet east of the intersection of Telephone and Winkler. It fronted about 550 feet on Winkler and was about 400 feet deep. It was just opposite the point where Woodridge Street comes into Winkler Drive from the north. There was no street other than Winkler touching the tract. It contained 4½ acres and was sold to a church in August, 1948 for $20,000 or about $4,-444 per acre. Just west of Tract 22 is Tract 23 fronting on Winkler about 540 feet and being 150 feet in depth. It was sold in February, 1949 for $39,000 or 49 cents per square foot. Tract 13 consisted of about 17 acres and was sold in May, 1949 for $35,900. It adjoins Tracts 22 and 23 on the south. Plum Lane adjoins it on the west. Tracts 15 and 16, each, abut on Winkler Drive just to the west of Tract 23. Each fronts 50 feet on Winkler and has a depth of 150 feet. Both tracts were sold in February, 1949, Tract 15 being sold for 73 cents per square foot and Tract 16 for 76 cents per square foot. These tracts were from about 3,600 to 4,600 feet northwest of the north line of appellant's tract. There was no residential subdivision im-

mediately adjoining them but as above detailed there were such subdivisions within a readily accessible position and within a short and relatively convenient distance. Too, there were some small businesses on Telephone Road both west and south of the tracts sold.

In addition to the tracts sold by Mr. Sturman, Mr. Ringer testified to numerous other sales that he learned about during his investigation and which he considered as an expert in reaching his conclusion as to the value of appellant's tract. Tract 1 was sold by Mr. Deats to Southern Lumber Company. It was a tract of 18.75 acres sold in May, 1947. It was on the west side of Winkler and just north of and abutting on Pine Gully. It fronted about 400 feet on Winkler and ran back west a long distance. It later became another addition to Greenway and was a restricted subdivision. Tract 2 adjoined Tract 1 on the north and fronted about 400 feet on Winkler. Sale of Tract 1 was for $32,397.50 or 5½ cents per square foot. We do not find the sales price of Tract 2. Tract 29 fronted 192 feet on the east side of Telephone and had a depth of 400 feet. It was between the intersection of Telephone and Griggs and Telephone and Winkler. It sold in July, 1948 for $11,325 per acre. Its use was commercial. Tract 32 was 50 feet on Telephone and had a depth of 400 feet. It sold in November, 1949 for $16,335 per acre. It adjoined Tract 32. Both of the last numbered tracts were across Telephone from Oak Acres. Tract 5 was about 2½ miles from the subject tract. It contained 4.67 acres and sold in October, 1951 to a church for $3,231 per acre. It fronted 410 feet on Reveille Road, an important and heavily traveled road running north and south through the middle of the area outlined.

These specifically mentioned tracts are illustrative. They all lie, except Tract 5, within the area above outlined. The others which are not specifically mentioned also lie within the area outlined.

On rebuttal the appellant introduced in evidence other sales within the outlined area that had not been mentioned by appellee's witnesses. Also other tracts were brought out by appellant on cross-examination. They are as follows: Tract 47, a triangular tract, on Telephone and Woodridge, was sold in October, 1950. It was about 180 x 177 feet and sold for $1.39 per square foot. Tract 42 on Telephone and McHenry was sold in March, 1949 for 83 cents per square foot. It fronted 60 feet on Telephone by 120 feet on McHenry. These tracts were about two miles from appellant's tracts. Tract 55 fronting 165 feet on Telephone and 162 feet on Woodridge sold in April, 1949 for $1.18 per square foot. A tract fronting 110 feet on Winkler and 72 feet on Golfcrest sold in August, 1948 for 98 cents per square foot. Tract 46 fronting 100 feet on Telephone sold in November, 1951 for $1.10 per square foot. A tract fronting 64 feet on Telephone and 120 feet on McHenry sold in October, 1950 for $.976 per square foot. Another tract near the one just mentioned that was 120 x 120 sold in November, 1951 for 83 cents per square foot. Another fronting 190 feet on Telephone sold in July, 1948 for $1.02 per square foot.

We hold that in the light of the whole record, none of the sales above listed were too remote in time or distance. Both with regard to time, distance and comparability a great deal of discretion is vested in the trial court in determining the admissibility of such testimony and his action will not be overturned unless an abuse of discretion is shown. Coastal Transmission Corp. v. Lennox, Tex.Civ.App., 331 S.W.2d 778, no writ history; City of Houston v. Collins, Tex.Civ.App., 310 S.W.2d 697, no writ history; Joyce v. Dallas County, Tex. Civ.App., 141 S.W.2d 745, no writ history; City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808; Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575, ref., n. r. e.; Thompson v. State, Tex.Civ.App., 319 S.W. 2d 368, no writ history.

■ We are also of the view that the tracts testified about were sufficiently comparable. Certainly they were different in shape. However, this characteristic is of relatively little value. We feel the most important factor is similarity of environment. Here all of the tracts, with the exception of the one on Reveille, were on either Telephone Road or Winkler, or, in the case of Tract 13, just off of Winkler. They were all accessible to and near surrounding residential developments already under way and potential residential areas which were not yet being developed but suitable for such. It is true that appellant's tract was immediately surrounded by greater development, but not sufficiently so to make the lands not comparable. The extensive travel on Telephone and Winkler was a great factor in making abutting property preferable for business and not for residences. This was evidenced by business development along such streets, particularly Telephone Road. See the following cases for a discussion of these principles: City of Houston v. Pillot, Tex.Civ. App., 73 S.W.2d 585; Cole v. City of Dallas, Tex.Civ.App., 229 S.W.2d 192, writ ref., n. r. e.; State v. Childress, Tex.Civ.App., 331 S.W.2d 230, ref., n. r. e.

It is also material and interesting to note that appellant's witness, Mr. Lee, had divided appellant's property into three parcels feeling it would best sell for small individual businesses. He then valued each parcel and for his total valuation of the tract added the valuation of the parcels. In thus dividing the subject tract, he made the tracts more comparable, shapewise, to the other tracts testified about. The evidence objected to would have been admissible on rebuttal.

■ Also, appellant waived any objection by introducing in evidence by way of rebuttal and cross-examination similar evidence that had not previously been developed, as we have specified above. Hughes v. State, Tex.Civ.App., 302 S.W.2d 747, ref., n. r. e.

■ We have read the entire record. We find the jury did not consider itself bound by the testimony of any one expert or other witness. It found a valuation well within the testimony that was fairly well balanced. We cannot say the verdict was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong.

The other points asserted by appellant have all been considered by the Court and are overruled.

■ Appellee moved that we strike the statement of facts because the motion to extend the time within which to file was allegedly not filed within 75 days after the date of the judgment. An original motion for extension of time was filed within the time prescribed by Rule 386, Texas Rules of Civil Procedure. This gave us jurisdiction over the cause and we had power to grant, and did grant on proper motions, additional extensions of time. Hodges v. Nix, Tex.Civ.App., 225 S.W.2d 576, ref., n. r. e.

Appellee, by its Cross-Point, complains of the action of the trial court in allowing appellant interest on the award from January 1, 1953 to October 15, 1954, the latter date being the date appellee deposited the Commissioners' award with the Clerk.

Without reciting the testimony, we think it suffices to say that it establishes that appellant was Mayor of the City of Houston when it became necessary for the City to acquire the subject property. Appellant gave permission for occupancy of the property and possession was taken June 1, 1951. We feel it established that this was done with the understanding that the compensation need not be paid or determined until appellant ceased to be Mayor, but that after he ceased to be Mayor the City should proceed to condemnation and to a determination of the value of the property. However, though appellant asked the City to proceed, it did not do so until 1954. The intent evidenced was that the possession

would not be unlawful but the determination of compensation and the payment of it would be made immediately after appellant ceased to be Mayor.

Appellee urges not only consent for possession waived interest, but says appellant had the obligation to sue for the property's value.

■■ We do not agree. As above stated, the record is susceptible to the construction that there was waiver of compensation only until appellant ceased to be Mayor and the City should have gone forward after such date.

■ Interest on compensation awarded for property taken is awarded as damages for money wrongfully detained.

We think the principles stated in Texarkana and Ft. S. Ry. Co. v. Brinkman, Tex. Civ.App., 288 S.W. 852, aff'd Tex.Com.App., 292 S.W. 860, are applicable here. Interest is recoverable on the value of the land taken from the time the compensation should have been paid until it is paid where possession of the land is taken. The Texarkana case was one where the Commissioners in condemnation awarded damages of $1,000. The sum of $2,000 was deposited in court by the condemnor and this gave it the right to possession. Both condemnor and condemnee appealed. The award was made in 1917. The case was tried in the County Court in 1925. The award there was $5,520. The trial court allowed interest for the full period between the deposit of the award and judgment.

While the case is not on all fours with this case, by analogy its holdings are applicable. Here the possession was rightful because of consent to possession without payment of compensation first. However, the right to payment of compensation was only postponed until appellant should cease to be Mayor. It then became the duty of appellee to proceed to condemnation. It is true that appellant could have initiated suit for compensation. In case he

had done so; he would have been entitled to interest. We do not view with enthusiasm appellee's suggestion that since appellant could have sued and did not, he should be allowed no interest. Appellee had it within its power to stop interest by proceeding. This it chose not to do.

The judgment of the trial court is affirmed.