**CITY OF AUSTIN, Appellant,**

**v.**

**Evelyn BERGSTROM, Appellee.**

**No. 11710.**

Court of Civil Appeals of Texas.

Austin.

Nov. 19, 1969.

Rehearing Denied Dec. 10, 1969.

Glenn R. Brown, City Atty., Austin, Sears & Burns, Robert L. Burns, Houston, for appellant.

King & Norris, Les King, Austin, for appellee.

PHILLIPS, Chief Justice.

This is a suit in condemnation by the City, Appellant, to acquire a tract of land con-

taining 54.45 acres in connection with the Decker Lake Project some five miles to the east of Austin.

Trial was before the jury which found the market value of the property to be $26,725 or approximately $500 per acre and the court entered judgment for appellee in accordance with this verdict.

We affirm that judgment.

Appellant is before this Court with seventeen points of error, the first four,[1] briefed together, complaining of certain sales of land in the vicinity that were admitted as comparable.

We overrule these points.

Appellee's 53.45 acres of land is roughly rectangular in shape, fronting approximately 800 feet on the north line of Hog Eye Lane, a gravel road, and having a depth of approximately 2,900 feet. The property is within five miles of the limits of the City of Austin.

Appellee's property is situated in a large undeveloped area in Travis County lying east of the City of Austin and east of Loop 111 (Bluestein Boulevard) between Farm to Market Road 969 (Webberville Road) and U. S. Highway 290. The area is accessible from the City of Austin and Bluestein Boulevard from the north (U. S. Highway 290) and south (Farm to Market Road 969). There is no east-west road or street from the city to the area between these two highways. From west to east the area is traversed by four north-south roads: Morris Lane, Decker Lane, Blue Bluff Lane and Farm to Market Road 973.

Along Decker Lane the distance between Farm to Market Road 969 and U. S. High-way 290 is more than four and a half miles, and along Blue Bluff Lane (extended straight to U. S. Highway 290), the distance is more than six and one-half miles.

In effect, the area has two east-west streets, Daffin Gin Road as extended by Decker School Road, running easterly from Old Manor Road, and crossing Morris Lane and Decker Lane to reach Blue Bluff Lane, and Hog Eye Lane, running from Decker Lane to Blue Bluff Lane and after an offset of several hundred feet from the latter to Farm to Market Road 973. There is no east-west road in the area between Bluestein Boulevard and Morris Lane.

Part of the area south of U. S. Highway 290 lies in Water District No. 13, and part of the area immediately south of U. S. Highway 290 and north thereof lies in Water District No. 8. Appellee's property is not within either district. In Farm to Market Road 969 in Water District No. 13 there is a 12-inch water main from Springdale Road to approximately the T. & N. O. Railway, an 8-inch line from there to Decker Lane, and a 6-inch line from there to Blue Bluff Lane. In Decker Lane there is a 6-inch main from Farm to Market Road 969 to a short distance south of Daffin Gin Lane, and in Blue Bluff Lane there is a 6-inch line from Farm to Market Road 969 to approximately 1,700 feet south of Hog Eye Lane. In both Decker Lane and Blue Bluff Lane there is a 2¼-inch line from a short distance of north of the termination of each 6-inch line.

In U. S. Highway 290 in Water District No. 8, an 8-inch main extends to the intersection with Morris Lane and a 6-inch main extends easterly from that point to the Manor High School. Along Old Manor

1. "POINT ONE: The trial court erred in admitting in evidence the testimony of the witness Wilson as to the circumstances and price of the sale of property from Thrasher to Gutierreze; POINT TWO: The trial court erred in admitting in evidence the testimony of the witness Wilson as to the circumstances and price of the sale of property from Lanford to Knudson; POINT THREE: The trial court erred in admitting in evidence the testimony of the witness Wilson as to the circumstances and price of the sale of 17 acres of land from Murchison to Pribble and POINT FOUR: The trial court erred in admitting in evidence the testimony of the witness Wilson as to the circumstances and price of the sale of property from Winsted to Clemons."

Road a 6-inch line extends from Springdale Road to U. S. Highway 290.

It should be noted at the outset that some ten sales in the area were admitted into evidence as comparable sales. Some were in the water district, some were outside. Some were smaller tracts, some were larger. Some were near the property in question, others were some five miles away. It can be said with a reasonable degree of accuracy that the general topography in which the comparable sales were admitted is uniform and suitable, more or less, for the same purposes as the property in question. Consequently the comparable sales offered were the types of property that Rayburn[2] in his treatise on condemnation declares admissible. He states that evidence can be admitted of comparable and similar sales of comparable and similar properties located anywhere within the metropolitan trade area, if a city property is involved, or within the same type of marketable land area, if rural property is involved.

The record reflects that all the sales discussed by appellee's value witness were within a radius of five miles of the subject property and in the same area designated by the Austin City Planning Commission as suburban residential and that the larger tracts of land were being divided into smaller tracts. Gulf & Interstate Ry. Co. of Tex. v. Stephenson, 212 S.W. 215 (Tex.Civ.App., Galveston, 1919, no writ); City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954).

Appellee's value witness testified that in his opinion the subject land was worth $45,432.50 or $850 per acre.

In support of this valuation, he cited as comparable sales involving tracts of 3, 103, 17, 10, 17 and 125.24 acres.

The City's value witness testified that the market value of the subject land at the date of taking (April 28, 1966) was $13,-425.00 or $250 per acre.

The four comparable sales admitted into evidence of which Appellant complains in his points one through four comprised 17 acres sold in 1962 and located one mile southwest of the subject property. This acreage was within the water district and sold for $10,661.40 or $592 per acre.

10 acres south of Appellant's property sold in 1964 for $10,000 or $1,000 per acre. This property was also within the water district.

17.28 acres, one mile by road from the subject property, sold in 1962 for $5,467.56 or $316 per acre. This property also was within the water district.

3 acres fronting on Blue Bluff Road, within the water district, sold in 1963 for $2,350 or $785 per acre.

Appellant's principal argument against these sales is that the properties admitted were in the water district consequently they were not comparable. Appellant points out that Appellee's value witness testified that the highest and best use of the subject property was to subdivide by constructing a gravel street through the center of the property and selling tracts of several acres to either side of the road. Appellant stresses the fact that the subject property is within five miles of the City of Austin, that under the provisions of Art. 974a, Vernons Ann.Civ.St., any subdivision must be approved by the City of Austin and that such a subdivision as suggested would be illegal. Appellant further points out that the closest water district to the property in question has a rule that all back taxes that would have been due on properties seeking admittance must be paid before they can be connected and, further, that water would be refused to any subdivision not approved by the City.[3] Appellant's

---

2. Rayburn: Texas Law of Condemnation, p. 425, Section 140(2).

3. District No. 13 was formed to buy water from the City of Austin and the City sup-

plied water to the district under an "operating contract." This contract provides in part:

"No such water delivered to the District by the City under the terms of

value witness testified that it would cost $16,100 (plus unknown costs) to extend a six inch line to the subject property plus another $23,000 to extend a four inch line from the south boundary of the subject property to it's north line.

■ This evidence as to the prohibitive cost of subdividing the subject property was admissible for whatever it was worth; however, the jury could also have believed the testimony of Appellant's own value witness that the highest and best use of the property at the time was not for subdivision purposes but for holding until the area was ready for development. Thus the sole question to be determined was the value of the property taken as determined by comparable sales in the area.

■ The question as to whether comparable sales described land in or out of the water district presented a question of relative values to be considered by the jury for whatever weight they chose to attach in arriving at the value question before them. There were comparable sales both in and out of the district and several sales within the district but without water actually being on the property.

Nor are we impressed to Appellant's objections to the comparable sales because of variances in trees, gullies, size or shape. These go to the weight to be given the comparables rather than to the admissibility. Hays v. State, 342 S.W.2d 167 (Tex.Civ. App., Dallas, 1960, n. r. e.). The question of admissibility was within the discretion of the trial court, Holcombe v. City of Houston, 351 S.W.2d 69 (Tex.Civ.App., Houston, 1961, no writ). This discretion was not abused.

■ Appellant's points five and six, briefed together, are the error of the trial

court in admitting in evidence the testimony of the witness Legge on cross-examination as to the price of the sale of property from Davis to Vincent; in admitting in evidence the testimony of the witness Legge on cross-examination as to the price of the sale of property from Davis to Mitchell.

We overrule these points.

On direct examination, without objection, Harold Legge, a witness for Appellant, testified that on January 31, 1962, Fred W. Davis sold a 53.26 acre tract fronting on both Lindell Lane and Blue Bluff Lane to Chester Dorman for $157.50 per acre, and at the same time sold a 53.26 acre tract adjoining it on the west to Norman Beck for $157.50 per acre.

On cross-examination, after asking Legge various questions about the sales to Dorman and Beck, Appellee asked if Legge knew who sold "these tracts of land up here" (apparently pointing to the corner of Lindell Lane and Blue Bluff Lane and the tract abutting it on the south), and if he knew when each sold. Legge replied that the Davises sold the southerly tract of five acres to Raymond Vincent on June 24, 1961, and the corner tract of five acres on July 16, 1960 to Mitchell. Appellee then asked if Legge knew the consideration for the sale to Mitchell, and Legge replied, "I know what I have in my notes." Upon Appellee asking, "What do you have in your notes?", Appellant objected that the witness had not testified that the property was comparable to Appellee's property, that it was a five acre tract and that the testimony would be hearsay and would not be admissible because the witness had not used the sale as a factual basis of his opinion.

On request of the court, Appellant repeated the objection that the testimony would be hearsay, it was not a sale that the wit-

---

this contract shall be sold or delivered to consumers outside of the limits of the District without the written consent of the City, nor shall the District sell or deliver any of such water to any customer who shall offer such water for resale. No such water delivered to

the District shall be sold or delivered to customers in any subdivision within the District, and within five miles of the proper boundaries of the City of Austin, until such subdivision has been approved by the Planning Commission of the City of Austin."

ness used as a factual basis of his opinion so as to come under the rule permitting hearsay and that in addition the property was completely dissimilar to Appellee's property in that it was a 5 acre tract located on the corner of Lindell Lane and Blue Bluff Lane, and was not similar in size or shape, and could not be put to the same use. The same objection was made to the Vincent purchase. The court overruled the objections and permitted the witness to testify that Vincent paid $2,500, or $500 per acre, and that Mitchell paid $2,000, or $400 per acre.

The record discloses that on redirect examination, the witness had the opportunity to give his opinion as to comparability of the tracts objected to. Should his admission have been error it was harmless. Rule 434, Texas Rules of Civil Procedure.

 Appellant's points seven through ten,[4] briefed together, complain of the admissibility of four tracts of land as comparabies.

We overrule these points.

Here we have the same objections, for the most part, as we had in points one through four. However, in one sale Appellant moved to strike the evidence of the sale and to instruct the jury to disregard it on the ground that the witness could not testify whether the sale was voluntary and an open-market transaction because from his own testimony he had only made one inquiry and that was to confirm the price, citing City of Irving v. Caster, 397 S.W.2d 952 (Tex.Civ.App., Dallas, 1965,

no writ). The trial court overruled this motion.

The situation here is different from *Caster* as Appellant's own witness later discussed in great detail the circumstances and conversations he had with the parties to this same transaction and, in addition, testified that he considered the properties similar to a degree to the subject property. See Holcombe v. City of Houston, above, where the Court held that Appellant had waived any objection by introducing in evidence by way of rebuttal and cross-examination similar evidence that had not previously been developed.

 Appellant's point number eleven is the error of the trial court in admitting in evidence the testimony of the witness Wilson as to the circumstances and price of a sale of property from Cedar to Coffield.

We overrule this point.

This property comprised 125.24 acres approximately two miles northwest of Appellee's property, was purchased in 1965 for $800 per acre. The property is not in a water district.

Here Appellant complains that the Appellee's value witness testified that the two properties were not in a similar economic environment or subject to similar economic influences, that the property had more than 4,300 feet frontage on paved roads, had railroad frontage, an entirely different terrain, was in a different area and was purchased by the adjoining property owner.

4. "POINT SEVEN: The trial court erred in admitting in evidence the testimony of the witness Wilson as to the circumstances and price of the sale of property from Childs and Lake to Broadhurst; POINT EIGHT: The trial court erred in admitting in evidence the testimony of the witness Wilson as to the circumstances and price of the sale of property from Broadhurst to Austex Corporation; POINT NINE: The trial court erred in admitting in evidence the testimony of the witness Wilson as to the circumstances and price of the sale of property from Austex Investment Corporation to Marberry and POINT TEN: The trial court erred in overruling Appellant's Motion to Strike the testimony of the witness Wilson concerning the sale of property from Austex Investment Corporation to Marberry, as the witness admitted that he made no inquiry into the circumstances to determine whether or not the sale was a voluntary and open market transaction between an informed seller and an informed buyer."

Comparability is a relative term and is used in condemnation cases more in the sense of similarity. Holcombe v. City of Houston, above. As we pointed out in Hays v. State this evidence goes to the weight rather than the admissibility of the evidence. Here the trial court did not abuse its discretion and there is no showing that the admission resulted in harm to Appellant, Rule 434, T.R.C.P.

■ Appellant's point of error number twelve is the error of the court in refusing to submit to the jury the following instruction requested by the Appellant:

"You are instructed that until a plat of a subdivision of land situated within the City of Austin or situated within five miles of the corporate limits thereof has been approved by the Planning Commission or governing body of the City of Austin it is unlawful for such city or any official thereof to serve any land in such subdivision with any public utilities owned, controlled or distributed by such city and that such plat of such subdivision cannot be filed for record in the office of the County Clerk of Travis County."

We overrule this point.

Appellant contends that the testimony of Appellee's appraisal witness, Wilson, as to a market value of Appellee's property was based on his opinion of the highest and best use of the property. He testified that such highest and best use was to subdivide the property and to sell it in small tracts having three acres or more. He explained that he was not talking about a legally approved subdivision, but was thinking of cutting the land into smaller tracts, describing them by metes and bounds and selling them. He proposed to construct a road 50 feet in width up the middle of the property and sell off tracts on each side thereof.

Wilson testified that a 2-inch water main would not be sufficient to supply Appellee's property; that at least a 6-inch line would have to be constructed from the termination of the 6-inch line on Blue Bluff Lane to the front line of Appellee's property and from that point to the rear line. He estimated that it would cost about $16,100 to construct a 6-inch line from Blue Bluff Lane to the property and from the front property line to the rear property line. In addition, there would be the cost of extending the main from the termination point of the 6-inch line on Blue Bluff Lane up to Hog Eye Lane.

Harold Legge, Appellant's value witness, estimated that there would be a total cost of approximately $23,000 to extend a 4-inch water main from the point of termination of the 6-inch line on Blue Bluff Lane, along Blue Bluff and Hog Eye Lane to the north line of Appellee's property.

Although Wilson didn't know whether either the District or the City could serve a development similar to the one made by Winsted, except for planning to install a little better road, he valued Appellee's property on the basis of subdividing it without approval from the City and selling it off in tracts of three acres or larger, in a manner similar to Winsted's development.

The only issue submitted to the jury was the inquiry as to market value. The jury was given the proper instruction and the definition of this issue was in the correct form. There was no other finding required by the jury. This instruction was not necessary to aid or assist the jury in answering the issue submitted by the court and, had it been submitted would have an attempt on the part of the court to comment upon the weight of the evidence. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481 (1943).

The court had admitted testimony from both sides as to the highest and best use of the property. Had the Court submitted the requested instruction, this would have led the jury to believe that the Appellee's witnesses' testimony that the highest and best use of the property was not true and would

have further assumed the existence of a controverted fact.

■ Appellant's points of error thirteen and fourteen, briefed together, are the error of the trial court in overruling Appellant's objections to instruction Number XII of the charge of the court; in refusing to submit to the jury the special instruction relating to the jury excluding consideration of enhancement in market value resulting from the project.

We overrule these points.

The area for the Decker Lake Project was designated by motion of the City Council adopted on December 22, 1964. The date of the taking of Appellee's property was April 28, 1966.

The court submitted the following instruction to the jury:

"Since the land under condemnation is within the boundaries of the Decker Lake project, you are instructed that in arriving at your answer to Special Issue Number I, you shall not take in consideration any increase in value, if any, which may have accrued to defendant's land due to the Decker Lake project."

Appellant requested the court to submit the following instruction:

"In determining the market value of defendant's property as submitted to you in Special Issue No. 1, you are instructed that since such property is within the area designated on December 22, 1964 by the City of Austin as the Decker Lake Project, you shall not take into consideration the purpose or results of the City of Austin designating the Project area and acquiring property and constructing facilities within such area.

You are further instructed that you shall not take into consideration increase in market value, if any, or decrease in market value, if any, since December 22, 1964 resulting from the designation and acquisition of property, and construction of facilities for the Decker Lake Project."

We overrule Appellant's contention that the use of the phrase "any increase in value, if any" is a comment on the weight of the evidence. City of Austin v. Salyer, 441 S.W.2d 862 (Tex.Civ.App., Austin, 1969, writ ref'd n. r. e.); City of Austin v. Flink, 443 S.W.2d 397 (Tex.Civ.App., Austin, 1969, writ granted).

We likewise overrule Appellant's contention that sales after December 22, 1964 should be excluded because such sales automatically reflect enhancement due to the announcement of the project.

It should be noted at the outset that the trial court instructed the jury that they were not to consider any enhancement, if any, which might accrue due to the Decker Lake Project. The instruction that was given by the trial court in the present instance tracked the language used by the Appellate Court in State v. Cartwright, 351 S.W.2d 905 (Tex.Civ.App., Waco, 1961, error ref. n. r. e.) wherein it was held to be error not to give the following instruction:

" * * * 'Since the strip of land under condemnation is within the right-of-way for a highway which the State of Texas is acquiring, you are instructed that in arriving at your answer to Special Issues numbers one and two you shall not take into consideration any increase in value, if any, which may have accrued to defendant's land due to location of the highway on such site.' "

To the same effect see Uehlinger v. State, 387 S.W.2d 427 (Tex.Civ.App., Corpus Christi, 1965, error ref'd n. r. e.) and the authorities cited therein.

In Naumann v. Urban Renewal Agency of City of Austin, 411 S.W.2d 803 (Tex. Civ.App., Austin, 1967, errort ref'd n. r. e.) this Court held that date of taking for purposes of redevelopment and reuse by the City Urban Renewal Agency was the

date determinative of market value and thus when the tract is condemned damages shall be the market value of the property in the market where it is located at the time of the hearing. We further held that there was no evidence in the record, either offered or presented, as to the value of the property in question at any date other than the date of taking. In the present instance, neither the Appellant nor Appellee offered any testimony relating to the market value of the property sought to be condemned other than the market value of the property as of April 28, 1966. See also Uehlinger v. State, supra.

There is authority for the admission of evidence of sales of comparable land made subsequent to the date of the condemnation where the sales considered involved land that was not benefited by or its market value affected by the public improvement causing the condemnation. Housing Authority of City of Dallas v. Shambry, 252 S.W.2d 963 (Tex.Civ.App., Austin, 1952, error ref'd n. r. e.). The record discloses that the Decker Lake Project is enclosed and access is controlled, and that while lakes and lake shores in the area where there is no restriction of private ownership have greatly increased in value, the same influence that creates value is not present where private development is prohibited.

In addition, it is common knowledge that land in the Austin area has been appreciating in value at a steady rate annually irrespective of any city projects. Consequently, it would be unfair to seal off this increment at the date of the announcement of the project and declare that any additional value accruing subsequently would be due solely to the announced project. We hold that the court's instruction concerning any enhancement due to the project was sufficient. The condemnee should not be held to lose what is rightfully his because of lag time between the date of announcement of a project and the date of taking. See Uehlinger v. State, above.

■ Appellant's point fifteen is the error of the trial court in overruling the objection of Appellant to the definition of market value, including the phrase: "taking into consideration all the uses to which it is reasonably adaptable and for which it either is, or in all reasonable probability, will become available within the reasonable future.

We overrule this point.

The trial court instructed the jury that the term "market value" meant

"* * * the price the land would bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to purchase, but is under no necessity of doing so, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future."

Appellant objected to the language "taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future" on the grounds that (a) it was designed to permit the jury to give weight to the probability of lifting of restrictions on use of the property when there was no evidence of any such restrictions, (b) it was a comment on the weight of the evidence in that it required the court to find the property was not at the time available for a particular use which in the opinion of the court there was reasonable probability the property would become available for in the reasonable future and (c) it was proper only where there is a valid legal restriction on use of property which probably would be lifted within a reasonable time and does not refer to economic conditions which can only be changed by growth or other economic factors.

There is evidence that the best use of the property would be for subdivision pur-

poses. There is also evidence from Appellant's value witness that the tract in question was an "investment-type of property for probable future development."

This evidence was especially noteworthy in view of testimony that sales in the area had increased in value in the area from 40 to 100 per cent per year, that both speculators and developers were becoming interested in the area because of road development and because of the actions of the City Planning Commission, described above.

Under this record we hold that the instruction given by the trial judge was warranted. City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954).

Appellant's point of error number sixteen is that of the trial court in overruling the objections of Appellant to the portion of Paragraph IV of the charge of the court to the effect that the jurors are entitled to individually avail themselves of their experiences and knowledge in arriving at the proper answer to the special issues submitted, such objection being to the effect that it permitted the members of the jury to consider their individual personal experiences and knowledge in arriving at a verdict, and did not restrict the members of the jury to matters of common knowledge.

We overrule this point.

The court instructed the jury that in answering Special Issue No. 1, it would be guided alone by "the testimony introduced and submitted in evidence" and that the jury "must not discuss, refer to or take into consideration any evidence not introduced and permitted to be introduced" in the trial.

The court further charged the jury:

"A juror cannot become a witness in a case in which he or she is serving as a juror, neither on the witness stand nor in the jury room, or elsewhere; therefore, if any juror should relate to this jury his or her own experiences and/or knowledge, concerning the question herein propounded to you, that juror would then become a witness and would violate the instructions herein given and would violate his or her duty and obligations as a juror, however, the jurors are entitled to individually avail themselves of their experiences and knowledge in arriving at the proper answer to the question herein submitted. But you must confine your discussions to the evidence adduced before you on the witness stand."

Appellant objected to the portion of the charge reading " * * * the jurors are entitled to individually avail themselves of their experiences and knowledge in arriving at the proper answer to the question herein submitted" on the ground that the language invited the jurors to consider evidence which had not been admitted during the trial and was therefore contrary to the instructions that the jury was to only consider evidence that had been presented and admitted in the courtroom and that such language approved the jurors' use of their own experience and knowledge to arrive at the verdict whether or not such experience and knowledge was consistent with or comported with the evidence admitted during the trial.

It appears to us that an instruction directing a juror to do what any normal person would do anyway is at worst superfluous and certainly not, under this record, reversible error. Blue Diamond Motor Bus Co. v. Hale, 69 S.W.2d 228 (Tex.Civ.App., San Antonio, 1934, er. dism'd). Rule 434, T.R.C.P. Also see *Cannizzo,* above, in connection with harmless error in condemnation cases.

Appellant's point of error number seventeen is that the finding of the jury in answer to Special Issue No. 1 is so against the great weight and overwhelming preponderance of the credible evidence as to be manifestly wrong and unjust.

We overrule this point.

It is to be noted that Appellee's value witness testified that the market value was $850 per acre. Appellant's witness was of the opinion that the market value was $250 per acre. Both the Appellant and Appellee tested the experts' opinion on cross-examination and the jury found the market value to be approximately $500 per acre. These opinions were buttressed by a number of comparable sales in the area. In Holcombe v. City of Houston, supra, the Court in overruling the contention that the verdict was against the overwhelming weight of the evidence stated at page 74, of 351 S.W.2d

"[6] We have read the entire record. We find the jury did not consider itself bound by the testimony of any one expert or other witness. It found a valuation well within the testimony that was fairly well balanced. We cannot say the verdict was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong."

We affirm the judgment of the trial court.

Affirmed.