The **STATE** of Texas et al., Appellants,

v.

**Bill BRYAN et al., Appellees.**

**No. 16411.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 30, 1975.

Ogden Bass, Crim. Dist. Atty., A. B. Crowther, Jr., Asst. Crim. Dist. Atty., Angleton, for appellants.

No brief for appellees.

COLEMAN, Chief Justice.

This is an appeal by the condemning authority in a condemnation action from a judgment rendered on a jury verdict.

The State of Texas and the County of Brazoria, hereinafter referred to as the State, instituted an action to condemn 0.736 acre of land in Brazoria County. The State objected to the award made by the special commissioners and duly perfected their appeal to the District Court of Brazoria County, Texas. The commissioners' award was deposited by the State and was withdrawn by the landowner, hereinafter called Bill Bryan. The only issues at the trial were the value of the land taken and the damages to the 1.023 acre of the remaining property. The jury found that the value of the land taken was $15,000.00 and that the value of the remainder im-mediately before the taking was $70,000.00 but immediately after the taking was only $55,000.00.

The State contends that the trial court erred in not striking a juror for cause. During the voir dire examination of the jury panel it developed that Mrs. Jack E. Titus owned land in the vicinity of the condemned property. She stated that she had a value placed on her property and that while she would try to base her verdict on the evidence that she might hear from the witness stand, she would be "a little prejudiced about it" if she didn't think he was getting a proper amount because "if we put our land up for sale we would ask for, you know, a specified amount." The trial court refused to disqualify the witness, but there is nothing in the record to show that the State was thereby caused to take an objectionable juror.

The State contends that the record shows the juror was disqualified under Article 2134, Vernon's Annotated Texas Civil Statutes, as being a "person who has a bias or prejudice in favor of or against either of the parties." The testimony is susceptible to the construction that she had an opinion as to the value of the property in the area of the land being condemned, and that she had an opinion that the State should pay its full value. This does not show such bias or prejudice in favor of the condemnee as to disqualify the prospective juror. However, we think the juror might well have been excused from service on this case by reason of her opinion as to the value of the land. No reversible error appears, however, because the State has failed to show that it was denied a trial by a fair and impartial jury. It was not shown that the State was forced to try the cause before an objectionable juror, and it must be presented that the State was afforded a fair and impartial jury. City of Hawkins v. E. B. Germany & Sons, 425 S. W.2d 23 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.).

■ Upon direct examination the landowner testified to the effect that he was unwilling to sell his property, that he didn't want to get rid of it, that he couldn't do without the property, that the subject property was priceless to him, and that he could not replace the property for 50 cents a square foot. These statements were volunteered by the witness, and were not directly responsive to the questions asked. Objections were made to the statements and were sustained by the court. The court instructed the jury to disregard these statements. These statements were prejudicial to the State's rights in that they were calculated to and possibly did create sympathy for the landowner. We cannot say that the court's admonition to the jury was ineffective, or that the statements were so prejudicial as to require a reversal of the judgment. City of Mart v. Hasse, 281 S.W. 318 (Tex.Civ.App.—Waco 1926, writ dism'd). The trial court did not err in refusing to grant the State's motion for mistrial.

The trial court permitted the appraisers who testified at the trial to state the sales price of various properties which they considered comparable to the property being taken. Each of the appraisers testified to a number of sales which he had considered in forming his estimate of the value of the property under consideration. The three appraisers who testified for Mr. Bryan, the landowner, based their opinion of the value of the property taken to some extent on sales of land made after the stipulated date of taking. In each instance the State objected to the testimony as to the sales price of these tracts on the ground that the necessary predicate had not been laid showing that said sales had not been influenced by the subject highway acquisition project, that is, that there was no project enhancement contained in the sales price of said sales. These objections were overruled. A 20-acre tract of land adjacent to the Bryan property was sold after the date of taking for $10,000.00 per acre. There was testimony by two of the Bryan appraisers that this land was in some respects compa-rable to the Bryan property. The State introduced evidence showing that by reason of the project the adjacent property owned by Mr. Idoux lost a relatively small frontage on Highway 35, but gained a much larger frontage on the access road to be constructed. The State then moved to strike the testimony of Mr. Powers, who had supported his opinion as to the value of the property taken with three comparable sales, one of which was the Idoux to Powers sale. This motion was denied.

In State v. Oakley, 356 S.W.2d 909 (Tex.1962), it was stated that testimony concerning comparable sales, which is inadmissible to prove the facts of such sales as evidence of the value of the property condemned is not hearsay in the true sense when offered to show a basis of the opinion value stated by an expert witness. The court said:

". . . The better reasoned view, in our opinion, is that the testimony is proper in such latter capacity, where, as in the case at bar, the testimony is given by a professionally qualified appraiser whose qualifications, and the comparability of the sales to which he testifies, are not challenged. . . ."

■ Evidence of sales of comparable land made subsequent to the date of condemnation may be admitted into evidence where the sales considered involve land that was not benefited or its market value affected by the public improvement causing the condemnation. City of Austin v. Bergstrom, 448 S.W.2d 246 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.); State v. Williams, 357 S.W.2d 799 (Tex.Civ.App.—Texarkana 1962, writ ref'd n. r. e.).

■ In City of Fort Worth v. Corbin, 504 S.W.2d 828 (Tex.1974), the Supreme Court said:

"The determination of the cut off date for project enhancement must be made by the court and not by the jury. That ruling must often precede the determination of comparability of sales as well as

the admissibility of other evidence, which are matters for the judge to decide . . ."

The court also said:

"Sales of land outside the airport may be admissible under a proper exercise of the trial court's discretion, but dissimilarity of location and market is significant; the expert appraiser must be required to recognize this fact in estimating market value of the taken land . . . It was at this point of comparable sales and the measurement of value based thereupon that the errors of this trial had the most damaging effect upon the verdict and the judgment."

The question of project enhancement is related to the comparability of the sale offered in support of the expert's opinion. Where a proper objection is made to a sale on the ground that it is not comparable or that the value of the property sold has been affected by the project, the trial court must determine whether or not the sale is comparable and whether or not the price received has been influenced by the project. Where it is shown that the sale occurred after the date of taking the burden is upon the party offering the testimony to develop the facts showing whether or not the price of the property under consideration was affected by the public improvement causing the condemnation. Until such a showing is made the trial court is in no position to exercise his discretion as to the admissibility of the sale. Here the trial court admitted into evidence the sale without testimony from which he could determine lack of enhancement due to the project.

Mr. Bryan, the landowner, testified that as of the date of taking he had an opinion that the fair cash market value of the property was 50 cents a square foot. He explained his opinion by saying, "I haven't been able to replace it for that. I have been looking for a place." He had previously testified: "Well, of course to me, you know, it is priceless because I just don't want to get rid of it, it is something I can't do without and do anything with the rest of the property." The State moved for a mistrial pointing out to the court that the fact that the landowner was unwilling to sell had nothing to do with market value and was highly prejudicial and inflammatory. He also pointed out that the testimony about replacement value was prejudicial and presented to the jury an erroneous concept of value. The trial court had previously sustained an objection to the testimony about the land being priceless to the owner and ordered the jury to disregard that part of the answer. The court then sustained an objection to the witness's answer that he could not go out and replace the property for 50 cents a square foot and refused the motion for a mistrial. Prior to the conclusion of the trial the State made a bill of exception which reflects that Mr. Bryan based his testimony as to the value of his land, in part, on the fact that he could not replace the land for 50 cents a square foot. The State then moved that the court strike Mr. Bryan's opinion testimony as to the value of the land, and this motion was denied. This action of the trial court was error. Replacement cost is not a proper basis for the valuation of property where said property has a market value. An opinion founded on an improper measure of valuation is of no probative force. State v. Zaruba, 418 S.W.2d 499 (Tex.1967); Taylor County v. Olds, 67 S.W.2d 1102 (Tex.Civ. App.—Eastland 1934).

The State contends that the attorney for the landowner's jury argument was so highly prejudicial that it could not be cured by an instruction from the court. The expert appraiser whose testimony was offered by the State testified that the property remaining after the taking would not be suitable for the operation of the mobile home and motor home business which was operated by the landowner on the premises prior to the taking. He further testified that the property was suitable for the operation of other kinds of busi-

ness including a beer distributorship, a repair garage and lumber yard. He identified pictures which he had taken of similar businesses in and around the city. He also testified that the property remaining was worth as much after the taking as it was prior to the taking. In his final jury argument counsel for the landowner stated:

". . . The State's appraiser says it is not suitable for Bill Bryan to continue and operate his mobile home and motor home business, but can you get this, Ladies and Gentlemen, get this, that the State says 'Well, he can put in a beer joint or a beer distributorship. He can move off. We don't care whether he gets a place or not, don't care what he pays for it. He can put in a warehouse and rent it for 8 cents a square foot . . . They tell this man that chose his profession of mobile homes and motor homes, that he can put in a lumber yard, and yet it is not damages. . . .

" '. . . It is offensive to me that the State would take that position, that you would put these Christian people out of business and put them in the beer business . . .

" '. . . This is the first time that I ever saw the government come in and tell a man 'We are going to take your property, we are going to take so much of it that you can't operate your business there, but you can put in a beer distributorship.' "

The contention is made that the argument presented an improper basis of value and damages to the jury; was highly emotional and prejudicial; and was outside the record.

■ Where the ownership of land, improvements and business conducted thereon are in the same person, evidence of resulting injury to the business is admissible, not as a separate item of damage, but as affecting the market value of the remaining land and improvements for the uses to which they were adapted and were being

made. State v. Zaruba, 418 S.W.2d 499 (Tex.1967); City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176 (1951).

■ The testimony that the land remaining after the taking was no longer suitable for the conduct of the business which the landowner had been conducting on it was admissible as an element of damage. There was testimony that a large building was located on the remaining property, and that the lack of parking area diminished its value. On the other hand there was testimony that while the building and land remaining was not suitable to the conduct of the landowner's business, it was suitable for other types of business. In this case, the State was, in effect, putting the landowner out of business at this location. While we do not approve the language of the argument, the purport of the argument that the landowner could not continue his business was proper. There was no evidence, and no argument, concerning the necessity for or cost of tearing down the building, or concerning the amount of profits lost in the conduct of the established business. We condemn the language used for the reason that it was an appeal to emotion and sympathy. In this aspect the argument was erroneous, but we cannot say that it was so highly prejudicial and inflammatory that the harmful effect could not have been removed by an instruction from the court. The State made no objection to the argument and asked for no such instruction.

■ The landowner's counsel also stated to the jury, "Yes, the taxpayer is going to pay for it and they are going to pay for it in Maine, they are going to pay for it in California, they are going to pay for it everywhere. That is where the taxes go, for the public good, and I guarantee you it won't amount to a mil out of your pocket." This argument was objected to as appealing to the personal interest of the juror. The objection was overruled by the court. This argument constituted an improper appeal to the personal financial interests of the juror and was outside the record.

In his argument the attorney for the State said:

"Fortunately, or maybe unfortunately, we have nobody to sit in the chair as our client, but I am here representing the taxpayers and citizens of Brazoria County and the State of Texas."

The attorney for the landowner objected, saying:

". . . that he is here representing the taxpayers, that is out of the evidence. There is no evidence that he is representing them."

The court overruled the argument, saying: "I will allow it in argument." Referring to the landowner and the taxpayers the attorney for the State then said: "They deserve equal consideration." It can be seen that the argument of which the State complains was made in response to a previous argument of the attorney for the State.

The Supreme Court of Texas has stated clearly the rule which we must follow in considering assignments relating to the improper argument of counsel. In Texas Sand Company v. Shield, 381 S.W.2d 48 (Tex.1964), the court said:

"Regrettably, on several occasions this court has been called on to decide whether an argument by counsel necessitated a reversal of a cause. In some of the cases, such as Southwestern Greyhound Lines v. Dickson, supra, it has been held that argument otherwise excessive or improper is justified by 'invitation' emanating from the opposite side. In other cases, such as Blum v. Simpson, 66 Tex. 84, 17 S.W. 402 (1886), the rule as announced in Southwestern Greyhound does not authorize the use of language, the purpose of which is only to influence or prejudice the jury. Other cases deal with the question of whether certain types of argument are 'curable' or 'incurable'. . . . However, regardless of the type or category in which an argument might fall, the true test is as laid down in Texas Employers Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856

(1954), the test that has been consistently followed by this court since the adoption of Rules 434 and 503, supra. In the Haywood case, we said: 'The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict.' "

■ The court erred in overruling the objection to the statement by the State's attorney that he was representing the taxpayers. Such a statement invited the jurors to consider their own self interest in returning their verdict. The court also was in error in overruling the State's objection to the argument of the attorney for the landowner. This argument, however, was in reply to the argument of the State. After considering the entire record we cannot say that the argument was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

Finally the State contends that the trial court erred in not granting plaintiffs' requested instruction No. 5, reading:

"In determining the market value of the 0.736 acres of land condemned, as that is submitted to you in Special Issue No. 1, you are instructed that since the 0.736 acres of land in question is within the boundary of the very highway project for which it is being acquired, you shall not take into consideration any increase in market value of said 0.736 acres of land, if any there was, which may have been caused by this acquisition program."

■ In presenting their value testimony, the defendant landowner's witnesses introduced, over objection, sales made subsequent to the date of taking. These sales may have been influenced by the acquisition program. There is testimony in the

record of other comparable sales made prior to the date of taking. The trial court gave the jury no instructions limiting the jury in their consideration of the expert appraisers' testimony as to comparable sales. The landowner is not entitled to be compensated for the land taken at the market value of other lands where the market value of such lands has increased by reason of the public improvement after the date of taking. There is no evidence from which the jury could determine whether the purported comparable sales which occurred after the date of taking reflected project enhancement, or the amount by which the value of those lands had been enhanced. The error, if any, was the action of the trial court in admitting such sales. The requested instruction would have been of little, if any, value to the jury in determining the market value of the land taken at the date of taking. The trial court did not err in refusing to submit the requested instruction.

Mr. Sid Holdridge valued the property taken at $8,832.00 ($12,000.00 per acre) and the improvements on the land at $5,700.00, for a total of $14,532.00. Mr. Roy C. Powers valued the property taken at $13,248.00 ($18,000.00 per acre), and the improvements at $13,750.00 for a total of $26,998.00. Mr. Gene Hughes valued the property taken at $9,200.00 ($12,500.00 per acre), and the improvements at $12,013.00 for a total of $21,213.00. These were the three appraisers presented by the landowner. Mr. Bob Hutchins valued the property taken at $6,256.00 ($8,500.00 per·acre), and the improvements at $4,802.00, for a total of $11,058.00. Mr. Holdridge valued the remainder property including the improvements located thereon at $70,718.00 before the taking and $54,908.00 after the taking, resulting in damage to the landowner in the sum of $15,810.00. Mr. Powers valued the remainder property at $98,000.00 before the taking, and $55,000.00 after the taking, resulting in damage to the landowner in the amount of $43,000.00. Mr. Hughes valued the remainder property at $62,382.-00 before the taking, and $51,511.00 after the taking, resulting in a damage to the

landowner in the sum of $10,871.00. Mr. Hutchins valued the remainder property prior to the taking at $68,344.00 and was of the opinion that after the taking the value was the same, resulting in no damage. The jury was asked to value the property taken including improvements and answered $15,000.00. They found that the value of the remainder including improvements before the taking was $70,000.00, and that the value of the property after the taking was $55,000.00, resulting in a damage to the landowner of $15,000.00. There is no way by which we can determine the value the jury placed on the improvements, therefore we do not know the value placed on the land taken exclusive of the improvements. The answers made by the jury are well within the limits of the testimony given by the various expert appraisers. We see no indication that the jurors were influenced by improper motives or inadmissible evidence in arriving at their answers to the issues submitted. We cannot say that the accumulation of errors probably caused the rendition of an improper judgment.

The judgment is affirmed.